Anthony J. STRIGENZ, D.D.S., Respondent,

v.

DEPARTMENT OF REGULATION & LICENSING DENTISTRY
EXAMINING BOARD, Appellant-Petitioner.†

Supreme Court

*No. 80–189. Argued June 2, 1981.—Decided July 6, 1981.*

(Also reported in 307 N.W.2d 664.)

For the petitioner the cause was argued by *Lowell E. Nass,* assistant attorney general, with whom on the briefs was *Bronson C. La Follette,* attorney general.

For the respondent there was a brief by *William H. Alverson, Richard S. Marcus* and *Godfrey & Kahn, S.C.,* of Milwaukee, and oral argument by *Mr. Alverson.*

Amicus Curiae brief was filed by *John Sundquist* of Milwaukee, for the Wisconsin Affiliate of the American Civil Liberties Union.

STEINMETZ, J. The circuit court for Washington county, the Honorable J. Tom Merriam, entered judgment November 1, 1979, vacating and setting aside on judicial review a decision and order of the Dentistry Examining Board dated December 14, 1978, limiting the

---

† Motion for reconsideration denied, without costs, on September 1, 1981. ABRAHAMSON, J., took no part.

professional dentistry license of Anthony J. Strigenz, D.D.S., and also dismissing the amended complaint in this disciplinary proceeding. The court of appeals affirmed the decision of the trial court.[1]

Dr. Anthony J. Strigenz, D.D.S. (hereinafter Dr. Strigenz) is a dentist licensed to practice dentistry in this state. On November 3, 1976, Barbara Grogan, investigator of the department of regulation and licensing, filed an amended complaint against Dr. Strigenz. The complaint alleged, in part, that Dr. Strigenz was guilty of incompetence and a high degree of negligence in his treatment and provision of dental services to 14 named patients, and such level of treatment constituted unprofessional conduct in the course of practicing dentistry, contrary to sec. 447.07(3)(a) and 447.07(5), Stats.

Dr. Strigenz filed an answer and affirmative defense to the amended complaint, asserting that the Dentistry Examining Board (hereinafter board) lacked power or jurisdiction to hear or consider a license proceeding under sec. 447.07, Stats., if such proceeding was founded solely upon allegations of negligence. Before the extensive hearings commenced, Dr. Strigenz requested and received from the board a "Dental Bill of Particulars" alleging the specific faults or deficiencies as to his treatment of the patients in the complaint.

At the first hearing on December 20, 1976, Dr. Strigenz moved to dismiss the proceeding alleging the Dentistry Examining Board lacks the power to suspend or revoke a dentistry license on the grounds stated in the amended complaint. The hearing examiner denied the motion to dismiss for the purpose of conducting the hearing, but expressly reserved Dr. Strigenz's right to raise the issue, subsequent to the hearing and the filing of

[1] *Strigenz v. Dentistry Examining Board,* 99 Wis.2d 445, 299 N.W.2d 589 (Ct. App. 1980).

■

briefs. After the lengthy hearing process was completed, extensive briefs were filed by both sides regarding the motion to dismiss. On May 1, 1978, the hearing examiner denied Dr. Strigenz's motion to dismiss in a 16-page decision.

On June 24, 1978, the hearing examiner issued his findings of fact, conclusions of law and proposed order, totaling nine pages, accompanied by a 32-page memorandum opinion. These findings of fact were drawn by the examiner from the 3,530 pages of transcript of hearing testimony. The examiner made specific findings of fact as to 12 patients of Dr. Strigenz's. As to the treatment of 11 of these patients, the finding was that the dental work done by Dr. Strigenz "failed to meet minimal standards of acceptable dentistry."

The hearing examiner also found that such dental work by Dr. Strigenz "demonstrated gross incompetence and gross negligence in the performance of his profession" and concluded, as a matter of law, that by such demonstration of gross incompetence and gross negligence, Dr. Strigenz "engaged in unprofessional conduct in the course of practicing dentistry contrary to sec. 447.07 (3) (a) and 447.07 (5), Stats."[2]

---

[2] Sec. 447.07 (3) (a) and (5), Stats., provides:

"(3) Subject to the rules promulgated under s. 440.03 (1), the examining board may on its own motion make investigations and conduct hearings in regard to any alleged actions of any licensed dentist or certified dental hygienist, or of any other person it has reason to believe is acting or has acted in such capacity within the state, and may, on its own motion, or upon complaint in writing, suspend or revoke such license, registration or certificate, or reprimand the holder thereof if it finds that the holder has been guilty of:

"(a) Immoral, dishonorable or unprofessional conduct in the course of practicing dentistry;

". . .

"(5) 'Immoral, dishonorable or unprofessional conduct' means: Employing anyone to solicit patients; or resorting to unprofes-

Following the filing of objections to the decision by both sides, the Dentistry Examining Board, on December 14, 1978, adopted the decision of the examiner and limited the dentistry practice of Dr. Strigenz by excluding three areas of dentistry from his practice, periodontia, endodontia and fixed prosthodontics.

The issue before the court of appeals and this court is whether the authority of the Dentistry Examining Board, under sec. 447.07 (3) (a), Stats., to discipline a licensed dentist for "unprofessional conduct in the course of practicing dentistry" includes the authority to discipline a dentist for his failure to meet minimal standards of acceptable dentistry thereby demonstrating gross incompetence and gross negligence in the practice of dentistry. The sufficiency of the evidence in the record to sustain such findings of fact is *not,* pursuant to agreement between counsel at the circuit court level, an issue before the court of appeals or this court.

Dr. Strigenz claims a lack of due process due to the lack of "advance warning of the limits of permissible conduct" for him as a licensed dentist. He argues that the statutory term "unprofessional conduct" refers to ethics and not the quality of practice.

Sec. 447.07 (3), Stats., allows the board to investigate and conduct hearings in regard to any alleged actions of any licensed dentist or certified dental hygienist to determine whether the licensed holder has been guilty of: " (a)

sional advertising, as defined in sub. (6); obtaining a fee by fraud or deceit; wilfully betraying a professional secret; employing directly or indirectly a student or a suspended or unlicensed dentist to perform operations or make diagnoses, or to treat lesions of the human teeth or jaws, or to correct malposed formations thereof, except that an unlicensed person may perform exclusively mechanical work upon inert matter in a dental office or laboratory; the advertisement of dental business or treatment or devices in which untruthful or incorrect statements are made; habitual intemperance; or gross immorality; and, in the case of a dentist, conduct unbecoming a professional person."

Immoral, dishonorable or unprofessional conduct in the course of practicing dentistry."

Unprofessional conduct is defined in sub. (5) in several ways and finally "and, in the case of a dentist, conduct unbecoming a professional person."

A licensed dental hygienist does not practice dentistry as discussed in sec. 447.07(3)(a), Stats. A dental hygienist must function "under the direct supervision of a licensed dentist."[3]

Therefore, a licensed dental hygienist may be investigated, suspended, or revoked or reprimanded for acts relevant to that profession in sub. (3) but not for conduct unbecoming a professional person in the course of practicing dentistry which applies only to licensed dentists.

The amicus curiae brief of the Wisconsin affiliate of the American Civil Liberties Union claims the term "conduct unbecoming a professional person" is too vague and amorphous a phrase so that Dr. Strigenz is not warned nor advised what he may not do as a licensed dentist or putting it in reverse, he is not advised what he may do as a licensed dentist to be a professional person.

Sec. 15.08(5)(b), Stats., authorizes rule making by the examining board to "enforce professional conduct and unethical practices not inconsistent with the law relating to the particular trade or profession"[4] and sec. 227.014

---

[3] "447.08 **Dental hygienists.** (1) No person shall practice as a dental hygienist without a certificate from the dentistry examining board. Such a certificate shall authorize the holder, under the direct supervision of a licensed dentist, to perform those functions for which the hygienist has been trained in a school approved by the board."

[4] Sec. 15.08(5)(b), Stats., provides:

"(5) GENERAL POWERS. Each examining board:

". . .

"(b) Shall formulate rules for its own guidance and for the guidance of the trade or profession to which it pertains, and define and enforce professional conduct and unethical practices not inconsistent with the law relating to the particular trade or profession."

(2) (a), Stats., authorizes rule making "necessary to effectuate the purpose of the statutes . . . ."[5]

To this time the Dentistry Examining Board has not utilized its statutory rule-making powers for its authority under sec. 447.07, Stats.

It is not necessary that a written rule declare that a professional person must practice his or her profession in a minimally competent manner. It is not necessary to adopt a standard to declare that a licensed person must apply his or her professional skills in a minimally competent manner for that professional person to be on notice of such requirement.

The term "conduct unbecoming a professional person" in the statute was not meant by the legislature to govern only ethical or moral conduct of the licensed professional. That is not the intended meaning of the phrase, since in the same section immorality has already been prohibited. Other language of sec. 447.07 (5), Stats., has prohibited stealing, lying, fraud, deceit, betrayal, habitual intemperance and gross immorality. With that litany of prohibited behavior listed, certainly the phrase "conduct unbecoming a professional person" was not meant to govern exclusively the moral conduct of dentists.

To determine the meaning of the phrase, we look to the purpose of the statute. The purpose of the statute is to license persons as dentists as a privilege to the exclusion of all others in the practice of dentistry. That is a prime purpose of the statute; however, the end sought in granting the privilege represented by licensing is that the state is protecting its citizens. The license when granted is

[5] Sec. 227.014(2) (a), Stats. provides:

"(2) Rule-making authority hereby is expressly conferred as follows:

"(a) Each agency is authorized to adopt such rules interpreting the provisions of statutes enforced or administered by it as it considers to be necessary to effectuate the purpose of the statutes, but such rules are not valid if they exceed the bounds of correct interpretation."

a privilege which rises to a right not to be treated lightly but not without limitation and responsibilities.

The state has created the Dentistry Examining Board and the provisions of ch. 447, Stats., to assure the public that only competent persons will practice dentistry. When the professional license is issued to a dentist, the state assures the public of the competence of that person. As long as that person holds the dentistry license, the state of Wisconsin continues to assure the public of his or her competence as a dentist. The state does not rank nor rate the competence of the dentist but at the very least, the state does assure the public that the licensed dentist is competent to perform at a minimal standard as determined by others in the profession.

Neither Dr. Strigenz nor any other licensed professional can convincingly argue that he was not on notice that he had to perform professionally in a minimally competent manner for his conduct to be becoming a professional person.

The basis and purpose of a licensing statute in Wisconsin was stated in *State ex rel. Wis. Registration Bd. of Architects & Professional Engineers v. T. V. Engineers,* 30 Wis.2d 434, 438–39, 141 N.W.2d 235, 237 (1966) :

"Sec. 101.31, Stats., and its several subdivisions, regulate the practice of architects and professional engineers. It is founded in the police power of the state to protect the public welfare and to safeguard the life, health and property of its citizens. This statute, as all licensing regulatory statutes, is not enacted for the benefit of the persons licensed thereunder but for the benefit and protection of the public."

In *State ex rel. Green v. Clark,* 235 Wis. 628, 631, 294 N.W. 25, (1940), the court stated, "Protection of the public is the purpose of requiring a license."

This court has sustained administrative decisions involving standards claimed to be too vague. In *Lewis Realty v. Wisconsin Real Estate Brokers' Board,* 6 Wis.2d

99, 105, 94 N.W.2d 238 (1959), a regulatory statute empowered the Real Estate Brokers' Board to impose discipline on a broker who "Demonstrated untrustworthiness or incompetency to act as a broker or salesman in such manner as to safeguard the interests of the public" or who had "Been guilty of any other conduct, whether of the same or a different character from that specified herein, which constitutes improper, fraudulent, or dishonest dealing." Sec. 136.08(2)(i) and (k), Stats. 1955. On appeal the argument was "that the term *'improper . . . dealing'* found in sec. 136.08(2)(k), is too indefinite in meaning to afford any guide of conduct to licensed real-estate brokers and salesmen and is therefore unconstitutional and void." *Id.* at 106. The court did not agree and held "it is the duty of this court to so interpret a statute as to uphold its constitutionality if this can be reasonably done without doing violence to the accepted rules of statutory interpretation." *Id.* at 108. Under this mandate the court found that the meaning of the disputed term was apparent from the context of the statutes as a whole and was not excessively vague.

This court followed a similar approach in *Milwaukee v. Wilson*, 96 Wis.2d 11, 14, 291 N.W.2d 452 (1980) (loitering " 'in a manner and under circumstances manifesting the purpose of inducing . . . prostitution' " not excessively vague) ; *State v. Biller*, 262 Wis. 472, 482, 55 N.W.2d 414 (1952) (statutory term providing that a landowner shall not cut timber on an acreage " 'substantially in excess' " of his adjoining land is not so indefinite as to violate due process) ; and *State v. Zwicker*, 41 Wis.2d 497, 509, 164 N.W.2d 512 (1969) (disorderly conduct "under circumstances in which such conduct tends to cause or provoke a disturbance" is not so vague as to violate due process).

This court stated in *Vivian v. Examining Board of Architects*, 61 Wis.2d 627, 635–36, 213 N.W.2d 359

(1974) : "Incompetence does refer to some demonstrated lack of competence or ability to perform the professional functions."

The United States Supreme Court discussed the permissibility of a commission to promulgate a rule or proceed with enforcement of its responsibilities and that failure to do so did not withdraw all power from the agency to perform its duties. In *Securities Comm'n v. Chenery Corp.*, 332 U.S. 194, 202 (1947), that court stated:

"The function of filling in the interstices of the Act should be performed, as much as possible, through this quasi-legislative promulgation of rules to be applied in the future. But any rigid requirement to that effect would make the administrative process inflexible and incapable of dealing with many of the specialized problems which arise. . . . Not every principle essential to the effective administration of a statute can or should be cast immediately into the mold of a general rule. Some principles must await their own development, while others must be adjusted to meet particular, unforeseeable situations. In performing its important functions in these respects, therefore, an administrative agency must be equipped to act either by general rule or by individual order. To insist upon one form of action to the exclusion of the other is to exalt form over necessity." (Citation omitted.)

In *Kansas State Board of Healing Arts v. Foote*, 200 Kan. 447, 436 P.2d 828 (1968), that state's supreme court concluded a physician's license could be revoked on the basis of "extreme incompetence" within the meaning of the statutorily proscribed standard of "unprofessional conduct" despite the absence of "extreme incompetence" from the 11 statutory enumerated grounds for disciplinary action. At 454 that court stated:

"We conclude the board may revoke a license on the basis of extreme incompetence and in so doing here the board has not unlawfully created a new ground of revocation."

The Minnesota Supreme Court decided the same issue in *Reyburn v. Minnesota State Board of Optometry*, 247 Minn. 520, 523–24, 77 N.W.2d 651 (1956) as follows:

" 'Unprofessional conduct' is conduct which violates those standards of professional behavior which through professional experience have become established, by the consensus of the expert opinion of the members, as reasonably necessary for the protection of the public interest. . . .

"The legislature need not enumerate what specific acts or omissions constitute unprofessional conduct since the phrase 'unprofessional conduct' itself provides a guide for, and a limitation upon, the exercise by the board of its power to revoke a practitioner's license. . . . The board is thereby empowered to declare as 'unprofessional' *only* such conduct as fails to conform to those standards of professional behavior which are recognized by a consensus of expert opinion as necessary for the public's protection."

The purpose of the statutory power of the Dentistry Examining Board is to discipline dentists to protect the public. *State ex rel. Milwaukee Medical College v. Chittenden,* 127 Wis. 468, 534, 107 N.W. 500, 522 (1906). This court in *Rust v. State Board of Dental Examiners,* 216 Wis. 127, 130–31, 256 N.W. 919, 921 (1934), stated the reason for this exercise of police power as follows:

"The law contemplates regulation of the profession to such an extent as to protect the public, not only against the acts of unprofessional conduct of licensed dentists, but also against those who, by management or some other intimate relation, are in charge of those who are practicing dentistry under a single management. . . . The state in its soverign capacity is vested with police power which includes the power to conserve and protect the public health. . . .

"Such statutes as the one in question are not passed for the purpose of promoting the personal ends of individuals, but are statutory enactments in the exercise of the police power of the state to legislate for the safety, health, and welfare of the people."

This court holds the Dentistry Examining Board has authority under sec. 447.07(3)(a) and (5), Stats., to discipline a licensed dentist for "unprofessional conduct" or "conduct unbecoming a professional person," based on findings of fact of a failure to meet minimal standards of acceptable dentistry, without enactment of specific rules prohibiting such acts.

The decision of the court of appeals is reversed and the trial court's order granting the motion to dismiss the complaint is vacated and the motion is ordered denied.

*By the Court:* The decision of the court of appeals is reversed.

SHIRLEY S. ABRAHAMSON, J. *(dissenting)*. The issue in this case is not the abstract question of whether the legislature should provide that the Dentistry Examining Board may revoke, suspend or limit the license of a dentist for negligent or incompetent conduct. Nor is the issue in the case whether as a matter of policy a dentist's negligent or incompetent conduct should be classified as unprofessional conduct. The issue in this case is whether the legislature has expressly or impliedly delegated to the Dentistry Examining Board the power to limit the license of a dentist who is negligent or incompetent, and if so, how the Board is to exercise that power. The issue is one of statutory interpretation.[1]

The majority and I agree that the Board's statutory authority to discipline Dr. Strigenz on the ground of negligence or incompetence, if either exists in the case at bar, must be found in secs. 447.07(3)(a) and 447.07 (5), Stats. 1979-80.[2]

[1] The issue of statutory construction is one of law which this court can determine. *Dept. of Revenue v. Milwaukee Refining Corp.*, 80 Wis.2d 44, 48, 257 N.W.2d 855 (1977).

[2] Sec. 447.07(3), Stats. 1979-80, provides as follows:

"(3) Subject to the rules promulgated under s. 440.03(1), the examining board may on its own motion make investigations and conduct hearings in regard to any alleged actions of any licensed

The majority concludes that the Board has the authority under these sections to discipline a negligent or incompetent dentist. I conclude that the statute has not expressly or impliedly made negligence or incompetence a ground for limiting a license and that, although the Board has statutory rule-making power to state grounds for discipline in addition to those set forth in the statute, the Board has failed to issue a rule setting forth professional negligence or incompetence as such a ground. Thus the Board has, in my opinion, no power to limit Dr. Strigenz's license in the case at bar.[3] I therefore dissent.

Sec. 447.07 (3) (a) provides that the Dentistry Examining Board may suspend or revoke a license if the holder

dentist or certified dental hygienist, or of any other person it has reason to believe is acting or has acted in such capacity within the state, and may, on its own motion, or upon complaint in writing, suspend or revoke such license, registration or certificate, or reprimand the holder thereof if it finds that the holder has been guilty of:

"(a) Immoral, dishonorable or unprofessional conduct in the course of practicing dentistry;

"(b) Having procured his license or certificate by fraud or perjury or through error;

"(c) A violation of s. 447.02 (2) ;

"(d) Directly or indirectly sending impressions or measurements to a dental laboratory without a written authorization in form approved by the board, signed by the dentist authorizing the same, or directly or indirectly sending a patient, or an agent of a patient, to a dental laboratory for any purpose whatsoever. The board, its agents or employes may inspect dental offices to determine their compliance with this subsection, and may inspect the work authorization records of dental laboratories to determine compliance with this subsection.

"(e) A violation of s. 447.08.

"(f) A violation of the rules adopted by the examining board."

[3] For courts reaching a similar conclusion, *see Ortiz v. Adult & Family Services Div.*, 45 Ore. App. 925, 609 P.2d 1309 (1980); *State Bd. of Dentistry v. Blumer*, 78 Mich. App. 679, 261 N.W.2d 186, 189 (1977). *Compare Spray v. Board of Medical Examiners*, 50 Ore. App. 311, 624 P.2d 125 (1981).

has been guilty of "immoral, dishonorable or unprofessional conduct in the course of practicing dentistry." It is possible to read the phrase "immoral, dishonorable or unprofessional conduct" to describe one type of conduct or to describe three types of conduct, *i.e.* immoral conduct, dishonorable conduct and unprofessional conduct. That the legislature did not intend the latter interpretation is indicated by its failure to state separate definitions for each of the three possible kinds of conduct. The legislative intent to use this phrase as a single descriptive term encompassing specified conduct is persuasively shown by sec. 447.07(5), which defines the entire phrase in one subsection without any specific reference to any one or more of the adjectives in the phrase.

Sec. 447.07(5) states as follows:

"(5) 'Immoral, dishonorable or unprofessional conduct' means: [1] Employing anyone to solicit patients; or [2] resorting to unprofessional advertising, as defined in sub. (6); [3] obtaining a fee by fraud or deceit; [4] wilfully betraying a professional secret; [5] employing directly or indirectly a student or a suspended or unlicensed dentist to perform operations or make diagnoses, or to treat lesions of the human teeth or jaws, or to correct malposed formations thereof, except that an unlicensed person may perform exclusively mechanical work upon inert matter in a dental office or laboratory; [6] the advertisement of dental business or treatment or devices in which untruthful or incorrect statements are made; [7] habitual intemperance; or [8] gross immorality; and, [9] in the case of a dentist, conduct unbecoming a professional person."

The unqualified use of the word "means" in this definition rather than the use of the word "includes" indicates that the legislature intended to define the phrase "immoral, dishonorable or unprofessional conduct" to refer only to the nine specified practices. The list of nine prac-

tices in sec. 447.07(5) is therefore all inclusive.[4] Thus the issue of statutory interpretation before this court is whether negligence or incompetence falls within any of the nine practices defined in sec. 447.07(5), Stats., quoted above. The court and the Board are bound by the legislative definition set forth in sec. 447.07(5).

The only practice in the list possibly lending itself to the interpretation that it encompasses negligence or incompetence is the last specified practice, namely "conduct unbecoming a professional person." The majority concludes that negligent or incompetent conduct falls within the phrase "conduct unbecoming a professional person." This conclusion rests on two rationales: (1) Other conduct specified in sec. 447.07(5) prohibits immoral and dishonest acts, and therefore the legislature did not intend the phrase "conduct unbecoming a professional person" to govern exclusively the moral conduct of the licensed professional; and (2) The purpose of ch. 447 is to protect the public; the public is protected if negligent or incompetent persons are not allowed to practice dentistry; and therefore the phrase "conduct unbecoming a professional person" encompasses conduct showing negligence or incompetence. The majority's reasoning violates basic rules of statutory interpretation and reaches a result which is contrary to the legislative intent.

Although the majority reasons that because the other eight specifications in sec. 447.07(5) relate to morals, "conduct unbecoming a professional person" must govern other types of misconduct, the more usual rule of construction is that a coupling of phrases manifests a legislative intention that all the phrases be understood in the same general sense. This concept is embodied in the doctrines of *noscitur a sociis* and *ejusdem generis*.

[4] Sands, *Sutherland, Statutes and Statutory Construction* sec. 47.07, p. 82 (4th ed. 1972); Dickerson, *Legislative Drafting* 93 (1954).

*Lewis Realty Inc. v. Wisconsin Real Estate Bd.*, 6 Wis. 2d 99, 108, 94 N.W.2d 238 (1959); *Boardman v. State*, 203 Wis. 173, 175, 233 N.W. 556 (1930).

The majority also fails to take into account that the phrase "conduct unbecoming a professional person" has a common usage. The statutory phrase "conduct unbecoming a professional person" appears to be of similar import to such familiar phrases as, *e.g.*, "conduct unbecoming an officer," "conduct unbecoming a gentleman," "conduct unbecoming a tennis player at Wimbledon." These phrases connote in common usage and parlance conduct which falls below the generally accepted sense of right (vs. wrong), moral (vs. immoral), honorable (vs. dishonorable) and decent (vs. indecent) and which, whether occurring on the job or not, has a tendency to destroy public confidence or respect in the person exhibiting the conduct and in the group of which the person is a member.[5] The common usage is the one this court should adopt to comport with the legislative mandate that "in the construction of Wisconsin laws . . . all words and phrases shall be construed according to common and approved usage . . . ." Sec. 990.01(1), Stats. 1979–80.

The phrase "conduct unbecoming a [fill in the position]" is frequently used in the law, often in combination with prescribed acts which are declared illegal or immoral. In *State ex rel. Gudlin v. Civil Service Comm'n*, 27 Wis.2d 77, 133 N.W.2d 799 (1965), for example, an employee of the city of West Allis who was found to have engaged in immoral conduct in his private life was discharged on the basis of the commission's rules which

---

[5] *See* cases cited under heading "unprofessional," "unprofessional conduct," and "unprofessional and dishonorable conduct," 43A *Words and Phrases* (Perm. ed 1969). *See Parker v. Levy*, 417 U.S. 733 (1974) discussing the history and meaning of the statutory language "conduct unbecoming an officer and a gentleman."

provided for discharge if the employee committed an "immoral or criminal act," "has been guilty of conduct unbecoming an employee," or has been "wantonly offensive in his conduct . . . towards the public." The court upheld the discharge. The tenor of the opinion indicates that the court viewed the off-the-job conduct as having a tendency to destroy public confidence or respect and therefore as constituting "conduct unbecoming an employee." To the same effect is *State ex rel. Richey v. Neenah Police and Fire Comm'n,* 48 Wis.2d 575, 180 N.W. 2d 743 (1970), in which a police officer, who was charged with making improper advances to a woman, was removed from the force for conduct "unbecoming a police officer."[6] In these decisions the court has adhered to an interpretation of "conduct unbecoming" which reflects the common usage of the term.

In the absence of any indication in the statute to the contrary, the only intent which I can ascribe to the legislature is that the legislature intended "conduct unbecoming a professional" to be given its common usage. In situations where, as here, an individual may be forced to relinquish his or her profession, it becomes especially important to interpret statutory terms as they are commonly used and understood. The majority has, by interpreting "conduct unbecoming a professional" to include negligence and incompetence, inexcusably expanded the definition of "immoral and unprofessional conduct" beyond the legislature's list of specified practices and has in effect amended the statute. This expansion and amendment cannot be justified as remedying a legislative oversight or as implementing legislative policy.

---

[6] I do not reach the constitutional issue of whether in the absence of rules the statutory phrase "conduct unbecoming a professional person" is so vague as to violate state or federal constitutional concepts of due process. *Compare Megdal v. Oregon State Bd. of Dental Examiners,* 288 Ore. 293, 605 P.2d 273 (1980) (en banc) *with Pennsylvania State Bd. of Pharmacy v. Cohen,* 448 Pa. 189, 292 A.2d 277 (1972).

The legislature did not carelessly omit express reference to negligence or incompetence as a ground for discipline of dentists. Chapters 440–459, Stats. 1979–80, which relate to the department of regulation and licensing and the various examining boards, are replete with legislative awareness of the importance of assuring professional competence and of the need to authorize an examining board to discipline those whose conduct falls below acceptable standards for professional services. In numerous licensing statutes similar to those in ch. 447, the legislature has expressly provided that negligent, grossly negligent, incompetent, and grossly incompetent conduct constitute grounds for disciplinary action by the examining board. *See, e.g.*, nurses, sec. 441.07 (1) (c), Stats. 1979–80 (incompetent by reason of negligence), (sec. 441.07(1) (d) states as additional grounds for discipline "misconduct or unprofessional conduct") ; architects and engineers, sec. 443.11(1) (d), Stats. 1979–80 (gross negligence, incompetency or misconduct) ; physicians, sec. 448.02(3), Stats. 1979–80 ("acted negligently is an allegation of unprofessional conduct") ; psychologists, sec. 455.09(1) (h), Stats. 1979–80 (grossly negligent) ; hearing aid dealers, sec. 459.10(4), Stats. 1979–80 (incompetence or negligence) ; optometrists, sec. 449.07(1) (b), Stats. 1979–80 (grossly incompetent), (sec. 449.07(1) (f) states as additional grounds for discipline "is guilty of immoral or unprofessional conduct") ; real estate brokers, sec. 452.10(2) (i), Stats. 1979–80 (incompetency) ; and nursing home operators, sec. 456.10 (1) (a), Stats. 1979–80 (unfit or incompetent by reason of negligence, habits or other causes).

The significance of the absence of a similar provision in ch. 447 was considered by the court of appeals, 99 Wis.2d 445, 447, 299 N.W.2d 589 (Ct. App. 1980), which stated "[t]he legislature's express provision that negligent conduct shall constitute grounds for disciplinary ac-

tion as to certain licensees and its conspicuous failure to provide that negligent conduct shall constitute such grounds as to dentists indicates the legislature's intent to treat dentists differently from other licensees. '[W]here a statute with respect to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject is significant in showing that a different intention existed.' *State v. Welkos,* 14 Wis.2d 186, 192, 109 N.W.2d 889, 892 (1961)." I agree with the observation of the court of appeals. For similar reasoning, *see Megdal v. Oregon State Board of Dental Examiners,* 288 Ore. 293, 605 P 2d 273, 283 (1980) *(en banc).*

That the legislature did not carelessly fail to specify negligence or incompetence as a ground for discipline by the Dentistry Examining Board is also seen in secs. 447.-07(3)(f) and 15.08(5), Stats. 1979–80. Sec. 447.07(3) (f) empowered the Dentistry Examining Board to descipline a licensed dentist if he or she "has been guilty of . . . [a] violation of the rules adopted by the examining board," and in sec. 15.08(5), the legislature requires—not authorizes but requires—the Dentistry Examining Board "to define and enforce professional conduct." *See also* sec. 227.014, Stats. The court of appeals concluded, and the parties apparently concede, that the Dentistry Examining Board, by virtue of these statutes, could adopt a rule to include negligence and incompetence as grounds for discipline.

I conclude that secs. 447.07(3)(a), (3)(f) and (5) and 15.08(5) evince the deliberate legislative choice and policy to state certain conduct as grounds for discipline and to authorize the Board to promulgate rules proscribing other conduct which may be grounds for discipline. The legislature could not have made it any clearer that it did not intend to delegate basic policy matters as to the grounds for discipline for resolution by the Board

on an *ad hoc* and subjective basis with the attendant dangers of arbitrary and discriminatory application. *Cf. Grayned v. City of Rockford,* 408 U.S. 104, 109 (1972). The legislature expressly required and authorized the Board to adopt rules and expressly provided that a violation of the rule is grounds for discipline.

A legislative scheme which sets forth specific statutory grounds for discipline and which anticipates the adoption of any other grounds by administrative rule is demonstrative of a legislative intent to provide notice to the licensed profession, by statute or rule, of the grounds for the imposition of sanctions by the Board. This interpretation is consistent with the tenet that we are a government of law, not men; that discretionary power is necessary but that it "should be confined, structured, and checked." Davis, *Administrative Law of the Seventies* sec. 6.13–1, p. 238 (1976). As I read the statute, the legislature has clearly stated its policy that fair process requires that licensure not be based on *ad hoc* determinations in the absence of legislative or quasi-legislative underpinnings. I therefore conclude that the legislature intended that no species of conduct be the basis of discipline unless that conduct is expressly proscribed on the face of the statute or delineated by rule of the Board.

If the Board is to discipline for negligence or incompetence it is obligated by statute to promulgate a rule defining the proscribed conduct. The Board in the instant case has imposed discipline without adopting a rule to govern the professional standard of care or treatment required of dentists. The Board has not explained its failure to adopt such a rule.

This case illustrates the dangers of an *ad hoc* approach. It is not clear from the Board's action or the majority opinion what negligent or incompetent conduct constitutes "conduct unbecoming a professional person"—A

single incident of malpractice? Multiple incidents of malpractice? Conduct demonstrating negligence, gross negligence, a high degree of negligence, incompetence, or gross incompetence? Conduct failing to meet minimal standards of acceptable dentistry?

This case does not raise the question of whether the Dentistry Examining Board can sanction an incompetent dentist. It can. This case raises the question of whether the Board pursued the procedure which the legislature has mandated be followed before the Board may discipline a dentist for negligence or incompetence. I conclude that the Board has not pursued the procedure mandated by the legislature. Although the Board has expended large sums of taxpayer money and much time in litigation, it still has not issued the rules which might have avoided the litigation before us.

To be sure, the court has, in this case, "saved" the Board from the obligation to perform its statutory function and in this sense vindicated the Board's expenditure of time and money in litigation. Although it may, in the "short run," be in the public interest to limit Dr. Strigenz's practice,[7] it is not in the long-run interest of the dental profession or of the public for this court to approve the Board's failure to comply with the statutes. The law requires, as Justice Holmes wrote, that citizens "turn square corners when they deal with the Government."[8] I suggest, as did Justice Black, that "[i]t is not less good morals and good law that the Govern-

---

[7] The results of the hearing were hardly shocking. As the hearing examiner stated in his Memorandum Accompanying Findings of Fact, Conclusions of Law and Proposed Order, "After some thirty days of hearing, this case has simply narrowed itself to the issue of recognizing that Dr. Strigenz is deficient in his crown and bridge work; that he understands the basic concepts of occlusion, crown preparation, and the more fundamental restorative dentistry that has to do with filling cavities."

[8] *Rock Island & RR v. United States*, 254 U.S. 141, 143 (1920).

ment should turn square corners dealing with the people . . . ."[9] I suggest the Dentistry Examining Board adopt rules promptly and not rely on the court to save it a second time.

For the reasons set forth herein, as well as those set forth in the persuasive opinion written for the court of appeals by Judge Scott, I would affirm the decision of the court of appeals.

I am authorized to state that Justice Heffernan joins in this dissenting opinion.

[9] *St. Regis Paper Co. v. United States,* 368 U.S. 208, 229 (1961).