Neil NOESEN, Petitioner-Appellant,†

v.

STATE of Wisconsin DEPARTMENT OF REGULATION
AND LICENSING, PHARMACY EXAMINING BOARD,
Respondent-Respondent.

Court of Appeals

*No. 2006AP1110. Submitted on briefs October 16, 2007.
—Decided March 25, 2008.*

2008 WI App 52

(Also reported in 751 N.W.2d 385.)

† Petition to review denied 6/10/2008. Roggensack, J.,
dissents.

238

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *Robert T. Ruth* of *Ruth Law Office*, Madison; *Paul Benjamin Linton* of *Thomas More Society*, Northbrook, IL; and *Thomas Brejcha* and *Christopher Henning* of *Thomas More Society*, Chicago, IL.

On behalf of the respondent-respondent, the cause was submitted on the brief of *Bruce A. Olsen*, assistant attorney general, and *Peggy A. Lautenschlager*, attorney general.

A nonparty brief was filed by *Nicole M. Safar, Chris Taylor*, and *Jeralyn B. Wendelberger* of Madison for Planned Parenthood of Wisconsin, Inc. and Planned Parenthood Advocates of Wisconsin, Inc.; and *Kelda Helen Roys* of Madison, for NARAL Pro-Choice Wisconsin Foundation and NARAL Pro-Choice Wisconsin.

A nonparty brief was filed by *Jacqueline E. Boynton* of Milwaukee, for American Civil Liberties Union of Wisconsin Foundation and American Civil Liberties Union Foundation; *Laurence J. Dupuis* of Milwaukee for American Civil Liberties Union of Wisconsin Foundation; and *Sondra Goldschein* of New York, New York, for American Civil Liberties Union Foundation.

Before Hoover, P.J., Peterson and Brunner, JJ.

¶ 1. HOOVER, P.J. Neil Noesen appeals an order affirming the Pharmacy Examining Board's decision reprimanding him and placing practice conditions on his license. The Board concluded Noesen violated the standard of care applicable to pharmacists when he refused to fill or transfer a patient's prescription for an oral contraceptive. Noesen asserts he was not given proper notice of the standard of care, the discipline violates his state constitutional right of conscience, and the Board abused its discretion by instituting formal disciplinary proceedings instead of issuing an administrative warning. We reject these arguments and affirm these portions of the order.

¶ 2. Noesen also challenges the Board's assessment of costs, arguing it was an erroneous exercise of discretion to assess the full costs of the action against him. We agree that the Board failed to properly exercise discretion, and we therefore reverse the portion of the court's

order affirming the cost determination. We remand to the circuit court with directions to remand to the Board for reconsideration of costs.

### Background

¶ 3. Noesen became a registered pharmacist in Wisconsin in 1999. On June 5, 2002, he entered into a contract with RPh On the Go, Inc., a pharmacy placement service. The contract required Noesen to provide "all services generally performed by a registered pharmacist in the customary manner and extent ordinarily performed at pharmacies, all of which shall be performed in a professionally competent manner . . . ."

¶ 4. In July 2002, RPh assigned Noesen to the K-Mart pharmacies in Menomonie and Rhinelander. On July 2, 2002, Noesen sent a letter via e-mail to John Scott at RPh, detailing Noesen's conscientious objections. As relevant to this case, Noesen stated he wished to "exercise my right not to participate in"[1] certain tasks, including dispensing birth control pills for contraceptive purposes.[2] The letter had also been addressed to the two K-Mart pharmacies, but it was never sent to them. The letter did not specifically mention a refusal to transfer prescriptions.

---

[1] Noesen defined "participate in" as "to perform, assist in, recommend, counsel in favor of, make referrals for, dispense or administer drugs for, or otherwise promote, encourage, or aid." We recognize the broadness of "aid" might arguably include transferring prescriptions. However, such an expansive word choice has the effect of refusing to perform at even a minimum of professional competency. Such a result is untenable. *See infra,* ¶¶ 19–20.

[2] Specifically, Noesen objected to a "procedure involving a drug or device that may prevent the implantation of a fertilized human ovum. This includes, but is not limited to, drugs which are prescribed as contraceptives . . . ."

¶ 5. In addition to stating his conscientious objections, Noesen proposed a protocol that could be followed if he were presented with a situation that ran contrary to his beliefs. This protocol provided, in part:

> Before starting work each day, I will make my conscientious objection clearly known to the rest of the pharmacy staff. I will describe that I have a conscientious objection about participating in the provision of contraceptives to patients, receiving phone calls pertaining to contracepting, or the provision of information to patients directly related to contracepting.

> When confronted with an objectionable situation, which most likely would be a refill or new prescription for an oral contraceptive, I understand the necessity of responding in a professional manner with the patient(s), medical staff, and pharmacy staff. I will *immediately* notify the patient of my conscientious objection and offer to call the prescriber or give the original prescription to the patient if it has not yet been filled.

¶ 6. Prior to Noesen's placement at the K-Mart in Menomonie, an RPh representative informed the store's district manager that Noesen would not dispense contraceptives. The representative did not indicate Noesen refused to transfer prescriptions and did not forward a copy of the e-mail. On Noesen's first day at the store, he informed the managing pharmacist, Ken Jordanby, of his conscientious objections, but did not indicate he would not transfer prescriptions and did not provide Jordanby a copy of the e-mail. Jordanby agreed that in situations where Noesen would not fill prescriptions, and other pharmacists were not available, Jordanby would come into the store to fill the prescriptions.

¶ 7. On July 6, 2002, Amanda Renz went to the Menomonie K-Mart to refill her prescription for birth control pills. Noesen asked if she intended to use the

prescription for contraceptive purposes. When she informed him that she would, he advised her of his objection and refused to refill the prescription or to tell her where or how she could get it refilled. There was no other pharmacist available at K-Mart that day to fill the prescription, and Jordanby was unable to come to the store. Noesen did not know, nor did he attempt to ascertain, when Renz needed to start the new pack of pills or how many doses she would miss if the prescription was not filled that day.

¶ 8. Renz took her empty prescription package to a Wal-Mart pharmacy. When the pharmacist there called Noesen to transfer the prescription, Noesen refused to give the information necessary for Wal-Mart to fill the prescription,[3] believing it would constitute participating in contraception. Renz was able to have her prescription filled two days later, after missing the first dose of the medication.

¶ 9. Renz filed a complaint and the Department of Regulation and Licensing brought disciplinary proceedings against Noesen. The Department's complaint alleged that

> by refusing to transfer [the] prescription order in these circumstances, [Noesen] engaged in a pharmacy practice which constitutes a danger to the health, welfare, or safety of a patient by practicing in a manner which substantially departs from the standard of care ordinarily exercised by a pharmacist and which could have harmed a patient. This is unprofessional conduct as defined by [Wis. Admin. Code] § Phar 10.03(2) and (9)

---

[3] A prescription transfer must be completed by communication between two pharmacists. *See* Wis. Admin. Code § Phar 7.055(1)(a) (Jan. 2006).

and subjects [Noesen] to discipline pursuant to § 450.10(1)(a), Stats.[4]

¶ 10. Following the proceedings, the administrative law judge found, as a factual matter, that the ordinary standard of care for a pharmacist "requires that a pharmacist who exercises a conscientious objection to the dispensing of a prescription must ensure that there is an alternative mechanism for the patient to receive his or her medication, including informing the patient of their options to obtain their prescription." The ALJ then determined, as a legal matter, that by failing to inform K-Mart that he would not transfer an oral contraceptive prescription, and "by failing to provide information to the patient . . . regarding her options for obtaining a refill of her prescription which he refused to dispense or transfer," Noesen had "engaged in practice which constitutes a danger to the health, welfare, or safety of a patient and has practiced in a manner which substantially departs from the standard of care ordinarily exercised by a pharmacist and which harmed or could have harmed a patient, in violation of [WIS. ADMIN. CODE] § Phar 10.03(2)."

¶ 11. The ALJ ordered Noesen be reprimanded and limited his license. The limitations required, in part, that Noesen notify any pharmacy in writing of, and specify in detail, any practices he would decline and how he would ensure patient access to medication. The ALJ also ordered Noesen to pay the full costs of the disciplinary proceedings. The Board adopted the ALJ's proposed findings and order as its own. Noesen sought circuit

---

[4] All references to the Wisconsin Statutes are to the 2005–06 version unless otherwise noted. All references to the Wisconsin Administrative Code are to the January 2002 version unless otherwise noted.

court review. The court concluded the Board reasonably determined Noesen had engaged in unprofessional conduct contrary to the administrative code and affirmed the Board's decision. Noesen appeals.

## Discussion

## I. Standard of Care

¶ 12. On appeal, we review the agency's decision, not the circuit court's. *Painter v. Dentistry Exam. Bd.*, 2003 WI App 123, ¶ 8, 265 Wis. 2d 248, 665 N.W.2d 397. As the ALJ noted, the "central issue in this case is whether, by refusing to transfer the patient's prescription on the basis of his conscientious objection, [Noesen] departed from a standard of care ordinarily exercised by a pharmacist and which harmed or could have harmed the patient." The existence and nature of professional standards are questions of fact, susceptible to proof through testimony of people in the profession. *Doersching v. State Funeral Dirs. & Embalmers Exam. Bd.*, 138 Wis. 2d 312, 324, 405 N.W.2d 781 (Ct. App. 1987).

¶ 13. Whether an individual is engaged in unprofessional conduct is a question of fact. *Painter*, 265 Wis. 2d 248, ¶ 17. We do not substitute our judgment for the agency's if the factual findings are supported by substantial evidence in the record. Wis. Stat. § 227.57(6). We thus set aside an agency's factual determination only when the evidence is such that a reasonable person, acting reasonably, could not have reached the same decision from the evidence. *Sterlingworth Condo. Ass'n v. DNR*, 205 Wis. 2d 710, 727, 556 N.W.2d 791 (Ct. App. 1996).

¶ 14. Noesen first asserts the Department failed to give him "fair notice" of the standard of care, disciplining him based on an "unforeseeable and retroactive" interpretation of "unprofessional conduct." He complains nothing in the evidentiary sources relied upon by the Board "would have put [him] on notice that the course of conduct he followed in this case failed to meet minimum professional standards of care."

¶ 15. Licensing statutes are enacted not for the benefit of the individuals licensed, but for the benefit and protection of the public. *Strigenz v. Dept. of Reg. & Lic. Dentistry Exam. Bd.*, 103 Wis. 2d 281, 287, 307 N.W.2d 664 (1981). These statutes are founded on the state's police power to protect the public welfare and to safeguard the life, health, and property of its citizens. *Id.* "It is not necessary that a written rule declare that a professional person must practice his or her profession in a minimally competent manner." *Id.* at 286. It is also not necessary for licensing regulations to enumerate each specific act or omission that would constitute unprofessional conduct. *Id.* at 290. No licensed professional "can convincingly argue that he was not on notice that he had to perform professionally in a minimally competent manner for his conduct to be becoming a professional person." *Id.* at 287.

¶ 16. Thus, Noesen was at least on notice of Wis. Admin. Code § Phar 10.03(2), which describes, as unprofessional conduct:

> Engaging in any pharmacy practice which constitutes a danger to the health, welfare, or safety of patient or public, including but not limited to, practicing in a manner which substantially departs from the standard of care ordinarily exercised by a pharmacist which harmed or could have harmed a patient[.]

In addition, the contract Noesen signed with RPh required he perform his pharmacy services in a "professionally competent manner." Further, Noesen's own actions indicate he was on notice that he was obligated to help patients find an alternate method to obtain prescriptions he refused to fill. Otherwise, he would not have proposed a protocol for dealing with such a situation, a protocol that specifically acknowledged "the necessity of responding in a professional manner."

¶ 17. Noesen takes issue with the Board's interpretation of what constitutes a professionally competent manner. He essentially asserts that the applicable standard is the American Pharmacists Association's (APhA) "Pharmacist Conscience Clause," which "recognizes the individual pharmacist's right to exercise conscientious refusal . . . ." He asserts the clause is APhA's official policy and nothing in the clause puts him on notice that his course of conduct in this case fails to meet a minimum standard of care.

¶ 18. However, it is unnecessary for us hash out competing definitions of the standard of care. The existence and scope of that standard is a factual question. *See Doersching*, 138 Wis. 2d at 324. The Board's determination of the standard of care is amply supported by the record—it relied on testimony from the Department's expert witness and APhA's 1997–98 Policy Committee Report, which contained both the conscience clause and a code of ethics for pharmacists. Noesen merely argues his evidence and his expert were better and more credible, but we will not substitute our judgment for the agency's on fact questions.

¶ 19. More important, however, it does not matter what we would hold the standard of care to be, because we conclude Noesen failed to conform to even his own proposed standard. Once Noesen determined Renz was

using her prescription for contraceptive purposes, Noesen knew there were no circumstances under which he would help fill her prescription. Even the conscience clause he cited "supports the establishment of systems to ensure [the] patient's access to legally prescribed therapy . . . ."

¶ 20. In short, Noesen abandoned even the steps necessary to perform in a "minimally competent" manner under any standard of care. He prevented all efforts Renz made to obtain her medication elsewhere when he refused to complete the transfer and gave her no options for obtaining her legally prescribed medication elsewhere. The Board could therefore properly conclude he violated a standard of care applicable to pharmacists: it does not matter which standard, because Noesen's behavior "substantially departs" from all of them.[5] *See* Wis. Admin. Code § Phar 10.03(2).

¶ 21. The Board also held Noesen's actions harmed or could have harmed Renz, the second component of unprofessional conduct after a violation of the standard of care. *See id.* Noesen takes issue with this element as well, because it is undisputed Renz did not become pregnant that month and he contends "it is clearly unreasonable to conclude" she could have become pregnant given the miniscule increase in risk from her missed dose.

¶ 22. Noesen's determination not to fill Renz's prescription resulted in her missing the first day's dose of medication. Instead, she took that dose on the second day, as well as taking the second day's dose, per the

---

[5] Noesen asserts that the Wal-Mart pharmacist also violated the standard of care when she failed to advise Renz of other ways to obtain her prescription. Whether this is true has absolutely no bearing on whether Noesen violated his duty in the first place and is completely irrelevant here.

manufacturer's instructions for missed doses. Noesen seizes on the statistically small—0.2%—increased risk of pregnancy from a missed dose. However, there is no established minimum increase in risk requirement that saves Noesen. He concedes, and his expert concedes, that even a single missed dose of a birth control pill raises the risk of unplanned pregnancy. Pregnancy, in turn, has the potential for serious and sometimes fatal side effects for the mother, such as gestational diabetes, anemia, thromboembolic disease, or eclampsia. True, Renz suffered none of these, but the potential for harm is enough to violate the standard of care. WIS. ADMIN. CODE § Phar 10.03(2); *see also Painter*, 265 Wis. 2d 248, ¶¶ 14, 19.

¶ 23. Moreover, Renz testified she suffered emotional harm from the stress of worrying about a possible unplanned pregnancy. Noesen does not dispute she suffered this harm, nor does he contend it is insufficient as "harm" under the administrative code. The Board thus properly concluded Noesen's actions did, or could have, harmed Renz. Coupled with the failure to meet the standard of care, Noesen engaged in unprofessional conduct, subjecting himself to discipline.

## II. Right of Conscience

¶ 24. Noesen contends that, by disciplining him for failing to transfer a prescription, the Board has violated his right of conscience. He suggests the State could "establish standards for accommodating the religious and moral beliefs of pharmacists" and "adopt policies regarding access to prescription records that would not require a pharmacist to violate his right of conscience."

¶ 25. The Wisconsin Constitution offers more expansive protections for freedom of conscience than those offered by the First Amendment. *Peace Lutheran Church & Academy v. Village of Sussex*, 2001 WI App 139, ¶ 14, 246 Wis. 2d 502, 631 N.W.2d 229. When an individual makes a claim that state law violates his or her freedom of conscience, we apply the compelling state interest/least restrictive alternative test. *State v. Miller*, 202 Wis. 2d 56, 66, 549 N.W.2d 235 (1996). Under this test, the challenger must prove (1) that he or she has a sincerely held religious belief, (2) that is burdened by application of the state law at issue. Upon such a showing, the burden shifts to the state to prove (3) that the law is based in a compelling state interest, (4) which cannot be served by a less restrictive alternative. *Id.* This test is strictly applied; the burden cannot be generic but must be related to the exercise of a religious belief. *Peace Lutheran*, 246 Wis. 2d 502, ¶ 15. However, the United States Supreme Court has "never held that an individual's religious beliefs excuse him from compliance with an otherwise valid law prohibiting conduct that the State is free to regulate." *Id.*, ¶ 20 (citations omitted).

¶ 26. There is no doubt about, or challenge to, the sincerity of Noesen's religious convictions under the first prong. However, the circuit court noted, the discipline imposed here only requires Noesen "to make the extent of his religious belief and objections known to his employer before the commencement of his practice at the pharmacy. This will facilitate, rather than burden, [Noesen's] ability to exercise his conscientious objection in the future." We agree with the circuit court's analysis —Noesen has not shown, as required by the second

prong of the test, that he is burdened by the application of a standard of care, Wis. Admin. Code § Phar 10.03(2), or the discipline imposed by the Board. Because we conclude Noesen has not fulfilled his portion of the compelling state interest/least restrictive alternative test, we need not discuss the remaining prongs.[6]

## III. Warning vs. Reprimand

¶ 27. The authority to choose among penalties is discretionary with the Board. *Doersching*, 138 Wis. 2d at 328. Under Wis. Stat. § 450.10(1)(b)1, the Board "may reprimand the licensee or deny, revoke, suspend or limit the license or any combination thereof" of any licensee found to have engaged in unprofessional conduct. Before a warning may be issued, however, Wis. Stat. § 440.205 and Wis. Admin. Code § RL 8.03 (Nov. 2007) set forth specific findings that must be present. The Board must find: (1) a specific instance of misconduct; (2) the misconduct is a first occurrence; (3) the misconduct is a minor violation; and (4) an administrative warning will protect the public. If these findings are not made, issuing a warning would be an erroneous exercise of discretion.

¶ 28. Noesen contends that, assuming he engaged in unprofessional conduct, the Board erroneously exercised its discretion by instituting formal disciplinary

---

[6] Were we to reach the remaining prongs, Noesen concedes "that the State has a compelling interest in public health and safety, and that this interest includes ensuring that legally prescribed drugs are not improperly withheld from those for whom they have been prescribed." Thus, the only remaining question would be whether this state interest can be served by a less restrictive alternative.

procedures rather than giving him an administrative warning. He argues he has no prior instances of misconduct, this was a minor infraction, and a warning would be sufficient to protect the public.

¶ 29. It is evident that the Board did not consider a warning sufficient to protect the public, and it may be inferred that the Board did not consider this a minor violation. The opinion notes:

> [Noesen's] testimony gave the distinct impression that satisfying his own personal moral code was his only concern. [Noesen] *did not even acknowledge that he had caused or could have caused harm to a patient. In fact, [Noesen] argued that others were to blame* for the problem—the patient, Ken Jordanby, the Wal-Mart Pharmacist and the Pharmacy Examining Board. *Rather than accepting and acknowledging his responsibility as a professional pharmacist, [Noesen] would have the Board conclude that it was the obligation of others to interpret the extent of his conscientious objections and to ensure that an alternate arrangement was in place* so that patients would receive their health care.
>
> [Noesen] clearly needs training in the ethics of his profession . . . . In addition, the Order imposes limitations that will guide [Noesen] in the responsible exercise of his conscience . . . . Respondent is allowed to work as a pharmacist and to exercise his beliefs about contraception; he is merely prevented from doing so in a *manner where he deprives patients of their legal health care rights* . . . The imposition of the proposed discipline, training and practice guidelines strike the appropriate balance between the interests of an objecting pharmacist *and the need for protection of the public in this action.* (Emphasis added.)

Because the Board considered a warning insufficient to protect the public, it appropriately exercised its discretion by imposing discipline instead. *See* WIS. STAT. § 440.205; WIS. ADMIN. CODE § RL 8.03.

## IV. Imposition of Costs

¶ 30. Under WIS. STAT. § 440.22(2), the Board may, in its discretion, "assess all or part of the costs of the proceeding" against the licensee if the Board takes disciplinary action as a result. We give due weight to the Board's exercise of discretion. WIS. STAT. § 227.57(10). In reviewing the exercise of discretion, we look to determine whether the decision maker examined the relevant facts, applied the proper standard of law, and reached a reasonable conclusion. *Doersching*, 138 Wis. 2d at 328. Noesen contends the Board erroneously exercised its discretion by imposing the full costs against him in this case.

¶ 31. Here, the Board assessed costs because:

First, the Department of Regulation and Licensing is a "program revenue" agency, which means that the costs of its operations are funded by the revenue received from its licensees. Second, licensing fees are calculated based upon costs attributable to the regulation of each of the licensed professions and are proportionate to those costs. This budget structure means that the costs of prosecuting cases for a particular licensed profession will be borne by the licensed members of that profession. It is fundamentally unfair to impose the costs of prosecuting a few members of the profession on the vast majority of the licensees who have not engaged in misconduct. The cost of this proceeding should not be borne by or passed along to the other members of the profession who abide by the rules of practice and follow the law. Since [Noesen] is found to have engaged in

unprofessional conduct, he should be held responsible for the full costs of this proceeding.

¶ 32. An exercise of discretion must be "based upon the relevant facts by applying a proper standard of law and represents a determination that a reasonable person could reach." *Verhaagh v. LIRC*, 204 Wis. 2d 154, 160, 554 N.W.2d 678 (Ct. App. 1996). We conclude that the Board failed to exercise its discretion because it gave no consideration to the facts of the case. By concluding only that the profession should not bear the costs, the Board has created a bright line rule that fails to account for any other factors—aggravating or mitigating.[7] Indeed, imposing costs simply to prevent them from being passed on to others is a concern that would apply to any disciplinary proceeding. While the "program revenue" nature of the Department is one factor that may fairly be considered in the cost determination, the exercise of discretion contemplates more than application of a rigid rule or invocation of an omnipresent policy. The portion of the order affirming the Board's decision on costs is reversed and is remanded to the circuit court with directions to remand to the Board for reconsideration of costs only.

*By the Court.*—Order affirmed in part; reversed in part and cause remanded with directions.

---

[7] *See, e.g., Jarman v. Welter*, 2006 WI App 54, ¶ 7, 289 Wis. 2d 857, 711 N.W.2d 705 (error for court commissioner to set forth general policy regarding calculation of child support when law calls for exercise of discretion).