VIVIAN, Respondent, v. EXAMINING BOARD OF ARCHITECTS, PROFESSIONAL ENGINEERS, DESIGNERS AND LAND SURVEYORS, Appellant.

*No. 179. Argued November 26, 1973.—Decided January 4, 1974.*
(Also reported in 213 N. W. 2d 359.)

628

630

For the appellant there were briefs by *Robert W. Warren,* attorney general, and *Gordon Samuelsen,* assistant attorney general, and *William Dusso* of Madison, of counsel, and oral argument by *Mr. Samuelsen* and *Mr. Dusso.*

For the respondent there was a brief by *Risser, Risser & Eckerle* and *Bieberstein, Cooper, Bruemmer, Gartzke & Hanson* and *Paul C. Gartzke,* all of Madison, and oral argument by *Paul C. Gartzke.*

ROBERT W. HANSEN, J. The appellant board revoked the license of respondent as a professional engineer pur-

suant to the statute making any "gross negligence, incompetency or misconduct" grounds for such revocation.[1]

The scope of circuit court review of such board determination is prescribed by statute.[2] This court's scope of review is the same.[3] The issue in this case is whether there is substantial evidence,[4] not to be equated with preponderance of evidence,[5] that supports the board's find-

[1] Sec. 443.01 (13) (a) 4, Stats.

[2] Sec. 227.20, Stats. (Administrative Procedure Act), providing:
"(1) The review shall be conducted by the court without a jury and shall be confined to the record, except that in cases of alleged irregularities in procedure before the agency, testimony thereon may be taken in the court. The court may affirm the decision of the agency, or may reverse or modify it if the substantial rights of the appellant have been prejudiced as a result of the administrative findings, inferences, conclusions or decisions being:
"(a) Contrary to constitutional rights or privileges; or
"(b) In excess of the statutory authority or jurisdiction of the agency, or affected by other error of law; or
"(c) Made or promulgated upon unlawful procedure; or
"(d) Unsupported by substantial evidence in view of the entire record as submitted; or
"(e) Arbitrary or capricious."

[3] See: Milwaukee v. Wisconsin Employment Relations Comm. (1969), 43 Wis. 2d 596, 600, 168 N. W. 2d 809; Scharping v. Johnson (1966), 32 Wis. 2d 383, 389, 145 N. W. 2d 691.

[4] See: Milwaukee & Suburban Transport Corp. v. Public Service Comm. (1961), 13 Wis. 2d 384, 389, 108 N. W. 2d 729, holding: "'It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, taking into account the entire record including whatever might fairly be said to detract from its weight. The latter requirement does not, however, furnish a "calculus of the value" by reason of which a reviewing court can assess the evidence.'" (Quoting Green Bay & W. R. Co. v. Public Service Comm. (1955), 269 Wis. 178, 187, 68 N. W. 2d 828.)

[5] Margoles v. State Board of Medical Examiners (1970), 47 Wis. 2d 499, 512, 177 N. W. 2d 353, stating: "'Substantial evidence is not equated with preponderance of the evidence. There may be cases where two conflicting views may each be sustained by substantial evidence. In such a case, it is for the agency to

ings, with due weight to be given to the experience, technical competence, and specialized knowledge of the board.[6] Neither this court nor the circuit court is to retry the case, substituting the court's judgment for that of the board.[7] Applying this statutorily mandated standard, we will review (1) the findings of fact, and (2) the conclusions of law that undergird the board's revocation of respondent's license.

*Findings of fact.*

The board found that the respondent was employed to prepare plans and specifications for and to supervise construction of a garage addition. It found that the respondent did prepare such plans and specifications and was responsible for the construction of said garage addition. It found that a portion of the addition constructed collapsed, and that the collapse was caused by the failure of an "open web frame truss," designed by respondent. As to gross negligence, incompetency or misconduct, the board made two material findings of fact: (1) That the said truss was not designed or constructed to support a

---

determine which view of the evidence it wishes to accept. . . .' " (Quoting *Robertson Transportation Co. v. Public Service Comm.* (1968), 39 Wis. 2d 653, 658, 159 N. W. 2d 636.)

[6] Sec. 227.20 (2), Stats. (Administrative Procedure Act), providing:

"(2) Upon such review due weight shall be accorded the experience, technical competence, and specialized knowledge of the agency involved, as well as discretionary authority conferred upon it. The right of the appellant to challenge the constitutionality of any act or of its application to him shall not be foreclosed or impaired by the fact that he has applied for or holds a license, permit or privilege under such act."

[7] *Muskego-Norway Consolidated Schools Joint School Dist. No. 9 v. W. E. R. B.* (1967), 35 Wis. 2d 540, 563, 151 N. W. 2d 617, stating: ". . . the reviewing court is not to substitute its judgment for the judgment of the board." (Citing *St. Joseph's Hospital v. Wisconsin Employment Relations Board* (1953), 264 Wis. 396, 59 N. W. 2d 448.)

reasonable live load. This is supported by substantial evidence.[8] (2) That the respondent performed welding on the said garage addition without being certified as required by sec. IND 53.16 (13), 4 Wisconsin Administrative Code. This is conceded.[9] It is upon these two findings of fact [10] that the board's conclusions of law rest.

*Conclusions of law.*

The board reached three conclusions of law to support its concluding that it was in the public interest to revoke the certificate of registration as a professional engineer of the respondent. It found, (1) That respondent was incompetent; (2) that respondent was guilty of gross negligence; and (3) that the respondent was guilty of misconduct. Each conclusion will be separately reviewed.

### 1. *Was respondent incompetent?*

The board held that respondent's "failure to design an 'open web frame truss' which would support a reasonable live load" constituted incompetency. The trial court

[8] Leon Boland, a plan reviewer with the ILHR department, agreed with Ergun I. Somersan, assistant chief engineer, that the collapse was due to structural design mistakes, poor welding and lack of lateral support. Respondent Vivian testified that the mistake in design caused the collapse.

[9] Respondent Vivian testified: "I . . . did do some of the welding on the leg," and conceded that he was not a certified welder.

[10] The board made a third finding of fact: "That the data submitted for approval to the Department of Industry, Labor and Human Relations, for the portion of said structure which collapsed, contained inconsistencies." Testimony is in dispute as to what was said or questioned in conversations between respondent and ILHR department representatives, but there is no dispute as to such contacts and conversations taking place. If there were inconsistencies in the plans and specifications submitted, it was for the ILHR department to resolve them before approving the plans and specifications submitted. Finding no conclusion of law reached as resting upon this finding of fact, we note it but comment on it no further.

set aside the board's finding of incompetence for lack of evidence. Quoting Webster as defining incompetence to mean "without adequate ability, knowledge, fitness, etc.," the trial court held as a matter of law that "a single instance of a failure to use ordinary care is not of itself incompetence," with the qualification that "if it demonstrates a lack of ability to perform the professional functions it may be incompetence as that word is generally understood." The trial court then struck the board finding of incompetence, holding: "There is no evidence from which one could infer any . . . lack of ability to make a proper design as would be said to be incompetence."

We are required to negative any implication that it is only continued or repeated acts that can constitute incompetency in any situation. Where a real estate broker violated board rules in a single real estate transaction, this court upheld an agency finding of incompetency based upon conduct in a single situation.[11] However, in the case before us, we agree with the trial court that the evidence does not establish incompetency. The statute involved makes incompetency or gross negligence or misconduct grounds for revocation of license.[12] While we have upheld revocation where the three were lumped together as grounds for revocation,[13] each has a distinct meaning. Incompetence does refer to some demonstrated

[11] *Sailer v. Wisconsin Real Estate Brokers' Board* (1958), 5 Wis. 2d 344, 92 N. W. 2d 841. (Cited and followed in *Lewis Realty v. Wisconsin Real Estate Brokers' Board* (1959), 6 Wis. 2d 99, 106, 94 N. W. 2d 238. Cited with approval in *Ford v. Wisconsin Real Estate Examining Board* (1970), 48 Wis. 2d 91, 108, 179 N. W. 2d 786.)

[12] Sec. 443.01 (13) (a) 4, Stats.

[13] *Kuehnel v. Registration Board of Architects* (1943), 243 Wis. 188, 191, 9 N. W. 2d 630, upholding an agency finding that an architect was guilty of "gross negligence, incompetency, and misconduct in the practice of architecture" as a result of several acts in connection with two buildings.

lack of competence or ability to perform the professional functions. Gross negligence does involve some higher degree of a failure to exercise ordinary care of judgment in a given situation. Misconduct does relate to some deviation from a fixed duty or definite rule of conduct. The three words are not entirely synonymous nor completely interchangeable.

We deal here not with the board's findings of fact, but with its conclusion of law that the facts found warrant concluding the respondent was incompetent, rather than negligent or grossly negligent, in failing to properly design the building addition.[14] We have here an admitted error in the designing of the roof supports for a building addition. While the record is nearly devoid of testimony bearing upon how easy it would be to make or notice such error, the ILHR department engineer testified that the error was not obvious. In a letter to that department, the respondent stated, "This has been the first and only failure that I have experienced during the eleven years of private practice, and I can assure you, the last." We are considering here what the board, in its conclusions of law, termed "failure to design an 'open web frame truss' which would support a reasonable live load." We would hold, under these circumstances and on this record, that what the trial court referred to as "the acknowledged mistake of petitioner in the design resulting in the roof collapse under stress of a normal load" did not constitute incompetency. By a somewhat different route, we reach the same conclusion the trial

[14] *See: Pabst v. Department of Taxation* (1963), 19 Wis. 2d 313, 322, 120 N. W. 2d 77, this court noting: "After setting forth its findings of fact, in the instant case, the board set forth its determination that the trust was administered in Wisconsin as a conclusion of law and not as a finding of fact. While the board's label is not conclusive with respect to determining the substance of the statement as either a conclusion of law or finding of fact, we deem it significant in this case. . . ."

court reached that the finding of incompetency by the board is unsupported by substantial evidence in view of the entire record as submitted.

### 2. *Was respondent grossly negligent?*

In its opinion the trial court went further to hold: ". . . we do not think that evidence of a single failure to use ordinary care in design or failure to detect the error is either gross negligence or incompetence . . . ." While terming such single failure as "no more than an inadvertent error," it is clear that the trial court considered the failure in design and supervision to be an act of ordinary negligence. It observed, "Had the legislature intended that ordinary negligence was to be a ground for revocation of a license, it would not have modified the negligence as gross." As a matter of law then, the trial court is putting the negligent act here in the area of inadvertence or ordinary negligence and, as a matter of law, outside the realm of gross negligence. The trial court, in its opinion, stated that the evidence justified "no more than a finding of ordinary negligence."

In holding gross negligence not applicable to the acts of respondent, the trial court cited and relied upon the *Bielski Case* [15] as implying a course of conduct, in the trial court's words, "so reckless or in wanton disregard of the rights and safety of others as to evince a willingness to cause injury or damage." But *Bielski* makes clear that, initially, the difference between ordinary and gross negligence was a matter of degree, not a difference in kind.[16] The decision tells not only how, but why, gross negligence "acquired by metamorphosis a new nature" in tort, and particularly automobile accident

[15] *Bielski v. Schulze* (1962), 16 Wis. 2d 1, 114 N. W. 2d 105.

[16] *Id.* at pages 14, 15, stating: ". . . Gross negligence is . . . apparently considered in terms of degree, rather than kind of negligence in our early cases."

cases.[17] There is no reason for importing that judicial history and result into the term "gross negligence" in this statute governing revocation of engineers' licenses. As here used, the term "gross negligence" refers to degree of negligence, exactly as the term traditionally did. Even as the term "unprofessional conduct" has a different meaning and application in various professions, so the term "gross negligence," applied to an architect or professional engineer, distinguishes between gross or grave acts of negligence as compared to less serious or more ordinary acts of negligence. The legislative command that due weight is to be given to "the experience, technical competence, and specialized knowledge of the agency involved," [18] in determining what is gross negligence, indicates the determination of the grossness of the negligence is to be made by those knowledgeable as to the particular profession involved.

While properly included in a conclusion of law, we see the determination of whether admitted negligence is of such a degree as to constitute gross negligence as essentially a fact-finding process. Certainly it is a determination in which experience, technical competence and specialized knowledge are required, where the finding

[17] *Id.* at page 15, stating: "It gradually waxed strong in flesh and spirit on such terms as 'such a degree of rashness or wantonness which evinced a total want of care,' or 'a willingness to harm although such harm may not have been intended,' 'rashly,' 'recklessly,' and 'wantonly,' 'little less than an intentional wrong,' 'willingness to perpetrate injury,' or 'a purpose to take known chances of perpetrating an injury.' Gradually, gross negligence acquired by metamorphosis a new nature:—ordinary negligence lay in the field of inadvertence but gross negligence in the field of actual or constructive intent to injure, and the two did not grade into each other. When the drinking cases increased in number, we reached the point that the concurrence of causal ordinary negligence and intoxication, as a matter of law, was gross negligence."

[18] Sec. 227.20 (2), Stats. (Wisconsin Administrative Procedure Act).

concerns the degree of negligence in a failure to act of a professional man in a licensed and specialized profession. A lay person would suspect that failure to properly design or construct a roof is more serious than the failure to properly design and build a doorjamb or windowsill. But such lay person might consider the slightest oversight to be gross negligence if it were causally connected to the collapse of a church or school gymnasium roof on the night of its public dedication program. Experience, competence and specialized knowledge of the profession and its standards are certainly helpful in determining whether a failure to exercise care was grossly negligent.

Holding that the determination of whether the failure to properly design or supervise the construction of the roof supporting truss was or was not gross negligence is a matter for the board to determine, subject to the scope of judicial review, we here would remand the case to the examining board to make such determination.

It is true that the appellant board found the respondent guilty of gross negligence, but it did so stating that "the failure to correct said design prior to construction constituted gross negligence." This cannot be read as a generalized reference to the fact that the respondent supervised the construction and thereby had additional opportunities to notice and correct the defect in the plans and specifications. Briefs and arguments make clear that the holding is that the respondent failed to correct his plans and calculations after being warned or notified by state engineers of probable defects. On this point the trial court opinion stated: ". . . Petitioner was led astray by some erroneous calculations which apparently were not so obvious as to invite the express disapproval of the Commission's examiners of the plans, although there is a rather cryptic handwritten note in the record which the Board apparently construed as a criticism or inquiry. . . ." The "rather cryptic" note is a penciled notation on a letter that began "A question developed

on stresses . . ." and ended with "This also checked
out." We hold both note and notation too vague and
unclear to constitute notice of possible defect, much less
warning of actual defect, in the plans and specifications.
There was testimony concerning a conversation of re-
spondent with a state assistant chief engineer who did
not take the stand as a witness. The hearsay version of
that conversation had it ending with the state engineer
being "satisfied." While it is true that respondent failed
to correct the plans and specifications while he was
supervising the construction, there is no evidence in this
record to sustain a finding that he was warned or told
of the defect by state representatives. There is no find-
ing of fact that he was so warned or put on notice. On
remand, the sole question as to gross negligence is to be
whether the failure to design and construct an "open web
frame truss" which would support a reasonable live load
constituted gross negligence.

### 3. *Was respondent guilty of misconduct?*

The board found that "performing welding for a
project being constructed under his supervision, without
being certified as required by Section IND 53.16 (13),
Wis. Adm. Code, constituted misconduct in the practice
of Professional Engineering by the respondent." Re-
spondent does not deny that he did welding on the
project involved, and that he is not a certified welder.
Professional engineers are required to abide by provi-
sions of the state administrative code.[19] That code
covers welder qualifications,[20] inspection requirements

---

[19] A–E 4.06, 1 Wisconsin Administrative Code, provides: ". . .
The architect, professional engineer, designer, or land surveyor:
  ". . .
  "(2) Shall abide by, and conform to, the provisions of the Wis-
consin Administrative Code and all local codes and ordinances;"
  [20] IND 53.16 (13), 4 Wisconsin Administrative Code, provides:
  "(c) *Operator qualifications.* All welding shall be done by
skilled workmen who shall give satisfactory proof of their skill
and ability with process to be used on the proposed work."

for welders,[21] and certification of qualified welders.[22] Respondent contends that welding does not come within the definition of professional engineering, as statutorily defined. However, the statute provides that "responsible supervision of construction" is part of the practice of professional engineering.[23] The welding done by him as supervising engineer on the building project falls within the scope of "responsible supervision" of the construction project.[24] His welding work was done in the practice of professional engineering. The trial court held that "the petitioner doing welding for the job

[21] IND 53.16 (13), 4 Wisconsin Administrative Code, provides:

"(d) *Qualifications and inspection requirements for welding operations and operators.* 1. The state building code provides that the department of industry, labor and human relations shall determine necessary data, tests and other evidence required to prove the merits of materials, methods of construction and devices used in the construction, alteration and equipment of buildings or structures, and further, in connection with welding, requires such work to be done by skilled welders who must give satisfactory proof of their skill and ability."

[22] IND 53.16 (13) (d), 4 Wisconsin Administrative Code, provides:

"3. All welding operators employed as such in executive work covered by the Wisconsin state building code shall be previously qualified by tests as prescribed herein. These qualification tests shall be performed under the supervision of an approved testing laboratory or commercial testing engineer who will certify to the department of industry, labor and human relations that the operator has passed the prescribed qualification tests."

[23] Sec. 443.01 (2) (d), Stats., provides in pertinent part:

"(d) The practice of professional engineering within the meaning and intent of this section includes any professional service, requiring the application of engineering principles and data, wherein the public welfare or the safeguarding of life, health or property is concerned and involved, such as consultation, investigation, evaluation, planning, design, or *responsible* supervision of construction, alteration, or operation, in connection with any public or private utilities, structures, projects, bridges, plants and buildings, machines, equipment, processes and works. . . ." (Emphasis supplied.)

[24] *See: Kuehnel v. Registration Board of Architects,* supra, footnote 13, stating at page 197: ". . . Even though Kuehnel

without being certified was an intentional act knowingly done in violation of a known administrative rule which has the force of law," and that the finding of misconduct is here supported by substantial evidence. We agree.

Finally, respondent argues that the statute providing for revocation of license for misconduct is unconstitutionally vague. The statute refers to "misconduct in the practice of . . . professional engineering as a registered professional engineer." The word "misconduct" has a broad scope, and a wide range of meaning "according to the different connections in which it is used." [25] As used in this statute it clearly relates to unprofessional acts, and is synonymous with "unprofessional conduct," conduct that violates those standards of professional behavior which through professional experience have become established.[26] We do not find this statute, on its face, to be unconstitutionally vague. As applied to

---

might lawfully have made plans and specifications or supervised the erection of those dwellings in some capacity other than that of architect, he in fact was not acting in any such other capacity in relation to planning and supervising of the Cates and Jensen dwellings. The evidence in respect thereto clearly shows that he not only represented himself as a professional architect, but contracted to furnish his services in that capacity and that his services were engaged in reliance upon such representations. Consequently, the proceedings, determination, and the revocation of his certificate of registration because of his gross negligence, incompetency, and misconduct in the practice of architecture, were clearly within the jurisdiction of the board."

[25] 58 C. J. S., *Misconduct*, pp. 817, 818.

[26] *See: State v. Preston* (1968), 38 Wis. 2d 582, 157 N. W. 2d 615, 159 N. W. 2d 684. *See also: Reyburn v. Minnesota State Board of Optometry* (1956), 247 Minn. 520, 78 N. W. 2d 351; *Kansas State Board of Healing Arts v. Foote* (1968), 200 Kan. 447, 436 Pac. 2d 828; *Moore v. Board of Trustees* (1972), 88 Nev. 207, 495 Pac. 2d 605; *Board of Medical Examiners v. Mintz* (1963), 233 Ore. 441, 378 Pac. 2d 945; *Matter of Bell v. Board of Regents* (1945), 295 N. Y. 101, 65 N. E. 2d 184; *In re Hawkins* (1973), 17 N. C. App. 378, 194 S. E. 2d 540; *Martinez v. Texas State*

respondent, there is no shadow of right to claim vagueness. The respondent concedes a deliberate violation of a provision of the administrative code and that code requires licensed professional engineers to "abide by, and conform to, the provisions of the Wisconsin Administrative Code and all local codes and ordinances." [27] Given the specificity of this charge and the finding of fact and conclusion of law as to the welding work, we see no basis for claim of vagueness as applied to respondent. The trial court in its opinion, stated: ". . . We believe the standards for revocation are sufficiently definite so that members of the profession should have no trouble staying within the bounds of propriety." We agree, and hold the finding of misconduct based on respondent's doing the welding work to be supported by substantial evidence.

The trial court remanded this case to the examining board to impose a penalty on respondent, if it chose to do so, upon the board determination, upheld by the circuit court, that respondent was guilty of misconduct for his violation of IND 53.16 (13), 4 Wisconsin Administrative Code. We enlarge the nature of the remand to add that the examining board determine whether the respondent's

---

*Board of Medical Examiners* (Tex. Civ. App. 1972), 476 S. W. 2d 400. *See also: State ex rel. Richey v. Neenah Police & Fire Comm.* (1970), 48 Wis. 2d 575, 180 N. W. 2d 743; *State ex rel. Gudlin v. Civil Service Comm.* (1965), 27 Wis. 2d 77, 133 N. W. 2d 799.

[27] A–E 4.06, 1 Wisconsin Administrative Code, relating to adherence to statutes and codes, providing:

"Strict adherence to practice requirements of related sections of the Wisconsin statutes, the Wisconsin Administrative Code, and all local codes and ordinances should be maintained in all services rendered. The architect, professional engineer, designer, or land surveyor:

". . .

"(2) Shall abide by, and conform to, the provisions of the Wisconsin Administrative Code and all local codes and ordinances."

failure to design and supervise the construction of an "open web frame truss" which would support a reasonable live load constituted gross negligence. If the board determines such failure to design and supervise to constitute gross negligence, it shall impose a penalty appropriate to its finding of gross negligence and misconduct. If the board determines such failure to design and supervise to have been an act of ordinary negligence, it shall impose a penalty appropriate to its finding of an act of misconduct as to the welding.

*By the Court.*—Judgment appealed from is modified to expand the nature of remand to the board to include a determination of whether respondent's design error constituted gross negligence and, as modified, affirmed.