Calvin A. MONROE, Petitioner-Respondent,† .

v.

FUNERAL DIRECTORS & EMBALMERS EXAMINING BOARD,
Appellant.

Court of Appeals

*No. 83–1122. Submitted on briefs February 28, 1984.—
Decided May 23, 1984.*
(Also reported in 349 N.W.2d 746.)

† Petition to review denied.

For the appellant, the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Donald P. Johns,* assistant attorney general .

For the petitioner-respondent, the cause was submitted on the brief of *Randall R. Garczynski,* of Delavan.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

BROWN, P.J.   The Funeral Directors and Embalmers Examining Board appeals from the trial court's order vacating the board's decision suspending Calvin Monroe's license to practice as a funeral director and embalmer. We conclude that the record supports the board's ultimate findings of charges of gross negligence and offensive and obnoxious behavior. We therefore reverse the trial court's decision. We also reject Monroe's claim that Wis. Adm. Code, sec. FDE 3.01(2) and (5), dealing with "offensive and obnoxious" behavior and "gross negligence," respectively, is unconstitutionally vague for failure to give fair notice of the proscribed conduct.

The facts are simple and uncontroverted. John T. Callahan died shortly before midnight on April 24, 1980. Monroe, a funeral director and embalmer, was awakened by a telephone call from a nurse at Lakeland Hospital advising him that Callahan had died and that the family wanted Monroe to take charge. Because the family wanted an autopsy performed, the nurses advised Monroe he was to do arterial embalming only and return the body by 7:00 that morning for the autopsy. There was some delay at the hospital, and Monroe was not able to take the body from the morgue until about 3:00 a.m. During the ensuing hours, he performed cavitary embalming of the body rather than the requested arterial embalming. Monroe's action rendered the requested autopsy impractical.

When Callahan's surviving spouse and daughter questioned Monroe about this, Monroe indicated that he would never have an autopsy performed on a member of his family, as the body is "strung up and cut like a deer."

Monroe was ultimately charged by the Funeral Directors and Embalmers Examining Board with violating two of its rules, promulgated pursuant to an enabling statute, sec. 440.03(1), Stats.[1] The first charge alleges that Monroe was grossly negligent in violation of Wis. Adm. Code, sec. FDE 3.01(5) by virtue of performing cavitary embalming on Callahan's body rather than arterial embalming. The second charge, alleging offensive and obnoxious behavior in violation of Wis. Adm.

---

[1] Section 440.03(1), Stats., states:

The department may adopt rules defining uniform procedures to be used by the department, the real estate board and all examining boards attached to the department for receiving, filing and investigating complaints, for commencing disciplinary proceedings and for conducting hearings.

Code, sec. FDE 3.01(2), relates to Monroe's statements to the deceased's wife and daughter.

Wisconsin Administrative Code, sec. FDE 3.01(2) and (5) reads as follows:

Unprofessional conduct. Any occurrence of the following shall constitute unprofessional conduct by a licensed funeral director, embalmer or registered apprentice funeral director or embalmer or owner of a funeral establishment.

. . . .

(2) Acting in an offensive or obnoxious manner in the presence of family or persons attending to a part of funeral arrangements or a funeral service or other matters relating to final disposition.

. . . .

(5) Gross negligence in properly providing and performing the services of funeral directing or embalming for which the individual is duly licensed.

Following a hearing, the board concluded that Monroe had violated both subsections of the code and suspended his license to practice as a funeral director and embalmer for a period of sixty days. Monroe sought review of the board's decision and order in the circuit court. The trial court vacated the board's decision.

The dispute involves whether such conduct and statements were enough to sustain the board's conclusions that Monroe was grossly negligent and that he acted in an offensive and obnoxious manner. Although a determination of whether the facts fulfill a particular legal standard has been labeled a question of law, the Wisconsin supreme court has stated that "when the expertise of the administrative agency is significant to the value judgment (to the determination of a legal question), the agency's decision, although not controlling, should be given weight." *Nottelson v. DILHR,* 94 Wis. 2d 106, 117, 287 N.W.2d 763, 768 (1980). This is especially true

where the agency applied its "experience, technical competence, and specialized knowledge" to the decision. Sec. 227.20 (10), Stats.

If the examining board's legal conclusions are reasonable, we will sustain its decision even though an alternative view may be equally reasonable. *United Way of Greater Milwaukee, Inc. v. DILHR,* 105 Wis. 2d 447, 453, 313 N.W.2d 858, 861 (Ct. App. 1981).

We first consider whether Monroe's performance of cavitary embalming on the deceased, when arterial embalming was requested, constitutes gross negligence within the meaning of Wis. Adm. Code, sec. FDE 3.01 (5).

In *Bielski v. Schulze,* 16 Wis. 2d 1, 14–16, 114 N.W.2d 105, 111–12 (1962), the supreme court made clear that the difference between ordinary and gross negligence was a matter of degree, not a difference in kind. The supreme court long ago in *Annas v. Milwaukee & Northern Railroad Co.,* 67 Wis. 46, 64, 30 N.W. 282, 290 (1886), quoted with approval that: " '[the] degree of negligence, that is, gross negligence, usually involves the element of wanton recklessness and disregard of life or property . . . .' "

In *Vivian v. Examining Board of Architects,* 61 Wis. 2d 627, 638, 213 N.W.2d 359, 364 (1974), the court discussed the use of the term "gross negligence" in another licensing board's statute:

As here used, the term "gross negligence" refers to degree of negligence, exactly as the term traditionally did. Even as the term "unprofessional conduct" has a different meaning and application in various professions, so the term "gross negligence," applied to an architect or professional engineer, distinguishes between gross or grave acts of negligence as compared to less serious or more ordinary acts of negligence. The legislative command that due weight is to be given to "the experience,

technical competence, and specialized knowledge of the agency involved," in determining what is gross negligence, indicates the determination of the grossness of the negligence is to be made by those knowledgeable as to the particular profession involved. [Footnote omitted.]

In view of *Vivian* and its antecedents, we give great weight to the board's determination that Monroe's conduct in conducting a cavitary embalming with knowledge that an autopsy was to be performed within a few hours of the embalming is gross negligence. The board is composed of embalmers and morticians. They came to the conclusion that Monroe's conduct was no ordinary act of negligence. It is not unreasonable for the funeral directors and embalmers sitting on the board to have believed Monroe's conduct to be an inexplicable want of necessary care. The board could conclude that a person supposedly specializing in his field cannot excuse this action as mere inadvertence or negligence, as Monroe tried to do by saying he was "half asleep." Persons in this field of endeavor should know the effect that cavitary embalming will have on a proposed autopsy. We defer to the board's expertise in its decision that Monroe's action was an utter disregard of his supposed specialized knowledge of the profession.

We find that substantial evidence existed to support the conclusion that Monroe's conduct constituted a wanton or reckless disregard of his duties and obligations as a funeral director and embalmer.

We next consider whether there is sufficient support for the board's conclusion that Monroe's statements were offensive and obnoxious within the meaning of Wis. Adm. Code, sec. FDE 3.01(2).

Where an agency's interpretation of its own administrative regulation is involved, " '[i]t is black-letter law that the interpretation [given by the agency] . . . is entitled to controlling weight unless inconsistent with the

language of the regulation or clearly erroneous.' " *Houslet v. DNR,* 110 Wis. 2d 280, 285, 329 N.W.2d 219, 222 (Ct. App. 1982), quoting *Beal v. First Federal Savings & Loan Association,* 90 Wis. 2d 171, 183, 279 N.W.2d 693, 698 (1979).

Monroe made two statements that an autopsy was a procedure whereby the body is "strung up and cut like a deer." Such statements to family members experiencing severe grief from the death of a husband or father can certainly be considered contrary to the conduct expected of a licensed funeral director and embalmer. For the board to have considered these statements to be offensive is not clearly erroneous. It was within the board's province to determine Monroe's conduct as displeasing and distasteful.

Monroe's final argument is that the language of Wis. Adm. Code, sec. FDE 3.01(2) and (5) is unconstitutionally vague. Specifically, Monroe alleges that the term "gross negligence" in sec. FDE 3.01(5) and the term "offensive or obnoxious" in sec. FDE 3.01(2) are vague because they do not give reasonable notice of the prohibited conduct. We disagree.

Fundamental fairness requires that people be given notice of the conduct the law proscribes. *See Butala v. State,* 71 Wis. 2d 569, 573, 239 N.W.2d 32, 34 (1976). It does not require that the law define the boundaries of the conduct it seeks to proscribe with mathematical precision, as a certain amount of vagueness and indefiniteness is inherent in all language. *State v. Ehlenfeldt,* 94 Wis. 2d 347, 355, 288 N.W.2d 786, 789–90 (1980).

The standard for determining vagueness is whether the statute is so obscure that persons of ordinary intelligence must necessarily guess as to its meaning and

differ as to its application. *State v. Zwicker*, 41 Wis. 2d 497, 507, 164 N.W.2d 512, 517, *appeal dismissed*, 396 U.S. 26 (1969). The line between lawful and unlawful conduct need not be drawn with absolute clarity and precision. Not every instance of indefiniteness or vagueness is fatal to a statute. A fair degree of definiteness is all that is constitutionally required. *State v. Wolter*, 85 Wis.2d 353, 364, 270 N.W.2d 230, 236 (Ct. App. 1978); *State v. Courtney*, 74 Wis. 2d 705, 710, 247 N.W.2d 714, 718 (1976).

Monroe claims that the qualifying terms "obnoxious" and "offensive" have no inherent, objective content from which ascertainable standards defining the proscribed conduct can be fashioned. "Like beauty, their content exists only in the eye of the beholder." *Bence v. Breier*, 501 F.2d 1185, 1190 (7th Cir. 1974), *cert. denied*, 419 U.S. 1121 (1975). He concludes that the subjectivity implicit in the language of the rule permits the board to enforce the rule with unfettered discretion, and it is precisely this potential for arbitrary enforcement which is abhorrent to the due process clause.

To the contrary, we hold that this rule is similar to our disorderly conduct statute which has been found constitutionally sound in *State v. Givens*, 28 Wis. 2d 109, 135 N.W.2d 780 (1965), and *State v. Zwicker*, 41 Wis. 2d 497, 164 N.W.2d 512 (1969). In *Zwicker* at 508, 164 N.W.2d at 517–18, the supreme court said of our disorderly conduct statute, sec. 947.01, Stats., that:

Wisconsin's disorderly conduct statute proscribes conduct in terms of results which can reasonably be expected therefrom, rather than attempting to enumerate the limitless number of antisocial acts which a person could engage in that would menace, disrupt or destroy public order. The statute does not imply that all conduct which tends to annoy another is disorderly conduct. Only such conduct as unreasonably offends the sense of decency or propriety of the community is included. The statute does

not punish a person for conduct which might possibly offend some hypercritical individual. The design of the disorderly conduct statute is to proscribe substantial intrusions which offend the normal sensibilities of average persons or which constitute significantly abusive or disturbing demeanor in the eyes of reasonable persons.

Our reasoning parallels the supreme court's statement in *Zwicker*. The rule does not imply that all conduct which tends to annoy another is obnoxious and offensive. Only that conduct which unreasonably offends the sense of decency is included. The rule does not punish a funeral director for conduct which might possibly offend some hypercritical individual. Rather, its design is to proscribe a substantial intrusion offending the normal sensibilities of average persons or which constitutes significantly abusive or disturbing demeanor in the eyes of reasonable persons.

We note that all words and phrases are to be construed according to common and approved usage except for technical words and phrases and those with a peculiar meaning in the law. Sec. 990.01(1), Stats. The common and approved meaning of a word can be ascertained by reference to a recognized dictionary. *In the Interest of B.M.*, 101 Wis. 2d 12, 18, 303 N.W.2d 601, 605 (1981).

Black's Law Dictionary 971 (5th ed. 1979) defines "offensive" and "obnoxious" as synonymous in ordinary use and meaning with "highly objectionable, disagreeable, displeasing and distasteful." Certainly, people specializing in the funeral business should know what is distasteful such that it unreasonably interferes with efforts to support the comfort and repose of the bereaved. We conclude that the terms "offensive" and "obnoxious" as used in Wis. Adm. Code, sec. FDE 3.01(2) are sufficiently definite in meaning, in accordance with their common usage and understanding, to meet the constitutional standard.

Gross negligence has a peculiar meaning in the law which can be easily ascertained by looking to interpretations given to it in various cases. As previously discussed, gross negligence usually involves the element of reckless disregard. We conclude that the term "gross negligence" as used in Wis. Adm. Code, sec. FDE 3.01(5) is akin to conduct evidencing a reckless disregard.

Thus, Wis. Adm. Code, sec. FDE 3.01(2) and (5) is not unconstitutionally vague; rather, it gives fair notice of the proscribed conduct.

*By the Court.*—Order reversed.