138 Wis.2d 312 (1987)
405 N.W.2d 781
IN the MATTER OF the DISCIPLINARY PROCEEDINGS AGAINST Phillip DOERSCHING and Smith-Jorris and Doersching Funeral Home:
Phillip DOERSCHING, Petitioner-Respondent,
v.
STATE of Wisconsin FUNERAL DIRECTORS & EMBALMERS EXAMINING BOARD, Appellant.
No. 85-1612.
Court of Appeals of Wisconsin.
Submitted on briefs October 17, 1986.
Decided March 26, 1987.
*316 For the appellant the cause was submitted on the briefs of Bronson C. La Follette, attorney general, and William H. Wilker, assistant attorney general.
For the petitioner-respondent the cause was submitted on the brief of John H. Short and Vance, Wilcox, Short, Johnson & Ristow, S.C., of Fort Atkinson.
Before Gartzke, P.J., Eich and Sundby, JJ.
GARTZKE, P.J.
The Funeral Directors Examining Board revoked Phillip Doersching's licenses as a funeral director and embalmer for having badly botched a funeral. More specifically, the board concluded he was guilty of gross negligence, outrageous conduct and failure to provide a disclosure agreement before performing services, contrary to the board's published rules and sec. 445.13, Stats. The circuit court reversed the revocation and remanded the matter to the board for a rehearing on the outrageous conduct issue and for reconsideration of the revocation. The board has appealed.
Doersching's gross negligence and failure to provide the disclosure agreement are uncontested on appeal. The questions before us are whether substantial evidence supports certain of the board's factual findings, whether the board could conclude that Doersching's conduct was outrageous and whether the decision to revoke his licenses was a proper exercise of the board's discretion. We affirmatively answer all questions and therefore reverse the trial court and affirm the order of the Examining Board.
*317 Section 445.13, Stats., empowers the board to limit, suspend or revoke licenses of funeral directors and embalmers for any violation of ch. 445, Stats., or of any rule of the Department of Health and Social Services or the Examining Board or for unprofessional conduct. Wisconsin Adm. Code secs. FDE 3.01(5) and (9) declare that gross negligence and outrageous conduct constitute unprofessional conduct.[1]

*318 BOARD'S FORMAL FINDINGS AND CONCLUSIONS
Following a hearing before an examiner, the board found that Doersching practiced in Palmyra, where he owned the Smith-Jorris and Doersching Funeral Home. On the morning of June 7, 1980, Arnulfo Rocha was killed in an automobile accident and taken to a Ft. Atkinson Hospital. The Rocha family wanted Doersching to make the funeral arrangements. Doersching arranged for the director at a Cambridge funeral home to remove the body from the hospital and embalm it.
The body had a large open skull fracture, a small cut near the nose, and an apparent chest compression. The hair contained blood and broken glass. Before embalming the body, the Cambridge director washed the face, removed some glass from the hair and sutured the small cut. When embalming the body, he made six incisions plus the cavity injection.
The same day Doersching met the Rocha family at their residence. They told him they wanted the body shipped to the Sanchez Funeral Home in Nuevo Laredo, Mexico, for burial. During a second meeting that morning at his Palmyra funeral home, Doersching told Roberto, decedent's brother, that because of the extent of the injuries to decedent, there should be a closed casket funeral. Roberto told Doersching that the family wanted an open casket funeral. Doersching told Roberto about the arrangements to ship the body to Mexico and requested payment for the funeral in advance. Doersching never provided the family with a funeral purchase agreement.
A third meeting was held on June 7, 1980, at Doersching's funeral home. Loren Jorris, a director of *319 the home, and the family were present. The family paid Jorris for the funeral arrangements and the widow provided him with a suit of clothes for the body.
Doersching received the body at the Cambridge funeral home the afternoon of June 7. The Cambridge director had completed the embalming and had sutured the branchial and femoral incisions, but had not sutured the carotid incisions and had not sutured or otherwise closed the head wound. Doersching knew of these circumstances when he removed the body.
Doersching transported the body to his Palmyra funeral home where he put the nude body in two large plastic trash bags, one drawn over the head and the other over the feet, wrapped the body in a flannel sheet and put it in a casket. He did not put the clothes provided by the Rocha family in or with the casket. He did not suture the carotid incisions, suture or otherwise close the head wound, further wash or clean the hair or undertake any further embalming procedure.
Sunday morning, June 8, 1980, Doersching took the casket to an air freight office in Milwaukee. The plane containing the casket arrived in Laredo, Texas, on the evening of the next day. In accordance with Doersching's prior arrangements, the casket was transported that evening to the Sanchez Funeral Home in Nuevo Laredo, Mexico.
The Rocha family was at the Sanchez funeral home when the body arrived. The widow asked that the casket be opened to permit identification of the decedent. The embalming had not been entirely successful. Some decomposition of the body was apparent.
The board found that minimum standards for practices of funeral directors in Wisconsin in June 1980 required Doersching, as the funeral director *320 retained to prepare the body for burial in Mexico, to properly embalm or to ensure its proper embalming, ensure that all embalming incisions and other traumatic injuries were properly sutured or otherwise closed, and ensure that the body was properly clothed or otherwise appropriately contained and enclosed for shipment and disposition at its final destination. The board found that Doersching failed to meet every one of those requirements.[2]
The board concluded that Doersching had engaged in gross negligence in failing to properly provide services as funeral director or embalmer and had engaged in outrageous conduct in the practice of the profession exceeding all bounds usually tolerated by decent society, contrary to Wis. Adm. Code secs. FDE 3.01(5) and (9) and sec. 445.13(1), Stats. The board also concluded that by failing to provide a disclosure agreement to the Rocha family, Doersching violated Wis. Adm. Code sec. FDE 2.15(2)[3] and sec. 445.13(1). *321 The board ordered revocation of Doersching's licenses to practice as a funeral director and embalmer in Wisconsin.

CIRCUIT COURT'S DECISION
Doersching sought judicial review of the board's order under ch. 227, Stats. The circuit court concluded there was no evidence (1) that Doersching understood or agreed to prepare the body for an open casket funeral, (2) that he knew that the family had delivered clothes for the body to his funeral home, (3) that he had possession of clothing for the body before shipping it to Texas, (4) of an error or omission by him which caused the embalming procedure to be less than successful, and (5) that the average member of the community would consider Doersching's conduct outrageous. The court said that some of the family's distress was caused by the failure of the Mexican funeral director to inspect the body, and that a perfectly prepared body could have arrived in Mexico in less than perfect condition.
The circuit court concluded that the evidence supported the board's finding that gross negligence but not outrageous conduct had occurred, and that the board had failed to distinguish between gross negligence and outrageous conduct. The court concluded *322 that the penalty of revocation was insufficiently related to Doersching's conduct.

SCOPE OF APPELLATE REVIEW
[1]
We have summarized the opinion of the trial court because the issues center on its reasoning. We nevertheless review only the board's decision rather than the trial court's opinion, even though the court's opinion sharpens the issues. We review the board's findings, conclusions and order independently of and with no deference to the opinion of the lower court. Boynton Cab Co. v. ILHR Department, 96 Wis. 2d 396, 405, 291 N.W.2d 850, 855 (1980). In fewer words, our appellate review is ab initio. Id.
The scope of review, by the trial court and this court, is defined in sec. 227.57, Stats.[4] We will set aside or modify agency action if the agency has erroneously interpreted a provision of law. Sec. 227.57(5), Stats. We may not substitute our judgment for that of the agency as to the weight of the evidence on any disputed finding of fact, but we must set aside its action or remand the case to the agency if its action depends on a finding of fact that is not supported by substantial evidence in the record. Sec. 227.57(6). We are not to substitute our judgment for that of the agency on an issue of discretion, sec. 227.57(8), and we must accord due weight to the experience, technical competence and specialized knowledge of the agency as well as to its discretionary authority. Sec. 227.57(10).

*323 EVIDENTIARY BASIS FOR BOARD'S FINDINGS
[2]
The substantial evidence test is met if the evidence, including the inferences from it, is such that a reasonable person might have made the same finding as did the agency. Bucyrus-Erie Co. v. ILHR Department, 90 Wis. 2d 408, 418, 280 N.W.2d 142, 147 (1979). Substantial evidence may support conflicting findings, and if it does, we must accept the agency's choice, notwithstanding the reasonableness of contrary findings. Robertson Transport. Co. v. Public Serv. Comm., 39 Wis. 2d 653, 658, 159 N.W.2d 636, 638 (1968).
[3]
We turn first to Doersching's contention that no evidence supports a finding that he understood the family wanted an open casket funeral or that he agreed to such a funeral. The board made no formal finding to either effect, but that is not critical if we may infer that the agency made an unexpressed finding. Valadzic v. Briggs & Stratton Corp., 92 Wis. 2d 583, 591, 286 N.W.2d 540, 543-44 (1979). When discussing its findings and conclusions, the board said that Doersching failed to complete preparation of the body despite his knowledge that the family anticipated an open casket funeral. The evidence supports that finding. The board heard testimony that the family told him it wanted an open casket. The board noted that Doersching's testimony failed directly to address the issue. Under those circumstances, whether he expressly agreed to provide an open casket funeral is immaterial.
[4]
The validity of the board's order is unaffected by the lack of substantial evidence of an error or omission *324 by Doersching which caused the embalming to be less than successful. The board found that the minimum standards for practice as a funeral director in Wisconsin require that Doersching either properly embalm or ensure the proper embalming of the body. The existence and nature of professional standards are facts susceptible to proof through the testimony of persons within the profession. Carson v. Beloit, 32 Wis. 2d 282, 293, 145 N.W.2d 112, 117 (1966). Expert testimony supports the finding that minimum standards require that funeral directors either properly embalm or ensure the proper embalming of bodies committed to their care. Substantial evidence exists that Doersching did not ensure that the body was properly embalmed. By the time it arrived in Mexico, it had begun to decompose.
[5]
The validity of the order is unaffected by the lack of a finding that Doersching knew the family had delivered a bag of clothing to Jorris. The board heard expert testimony that the standards of the profession required Doersching to ensure that that body was properly clothed or otherwise appropriately contained. The board had evidence that the body must be, at a minimum, covered by underwear. The body was completely unclothed. Doersching covered the head and feet with trash bags.
[6]
We reject as irrelevant the possibility that even if the body had been superbly prepared after a perfect embalming, "something" could have happened to it on its journey. No evidence was offered of an intervening event which excused Doersching's failures. We also reject as irrelevant the suggestion that the Mexican funeral director could have saved the family some *325 grief and pain had he inspected the body before permitting them to see it.
[7]
Finally, we reject the contention that to support the conclusion of outrageous conduct, the record should show how the average person would regard Doersching's grossly negligent conduct. How the average citizen would react to particular facts is generally left to the factfinder without expert evidence or poll results. For example, how a reasonable person would have reacted is an everyday question in civil and criminal trials. Expert testimony on the question is rarely required. We do not require it here.

GROSS NEGLIGENCE AND OUTRAGEOUS CONDUCT
[8]
A person's behavior is a fact. Whether that behavior meets a legal standard of propriety or acceptability is a question of law. Whether conduct is grossly negligent or outrageous is therefore a question of mixed fact and law. Cf. Millonig v. Bakken, 112 Wis. 2d 445, 450, 334 N.W.2d 80, 83 (1983) (negligence is a question of mixed fact and law). If, as here, the historical facts have been established, whether conduct is grossly negligent and outrageous within the meaning of the board's regulations, Wis. Adm. Code secs. FDE 3.01(5) and (9), is solely a question of law.
We independently review administrative agency decisions on issues of law, although we may defer to the agency's reasonable interpretation of its own regulation. Beal v. First Fed. Sav. & Loan Asso. of Madison, 90 Wis. 2d 171, 183, 279 N.W.2d 693, 698 (1979). Because, however, the board did not separately *326 discuss gross negligence and outrageous conduct, and the board's regulations define neither term, we first examine the nature of two standards and then apply them to the facts without deferring to the board's conclusions.
[9]
Gross negligence has been jettisoned from the common law of this state, but it usually means a high degree of ordinary negligence. Bielski v. Schulze, 16 Wis. 2d 1, 17, 114 N.W.2d 105, 113 (1962). We conclude that gross negligence in Wis. Adm. Code sec. FDE 3.01(5) is used in that sense.
Outrageous conduct is usually compared to ordinary negligence. When that is the comparison, conduct is outrageous when the actor knows that he or she has acted without ordinary care but nevertheless proceeds in that conduct in reckless or conscious disregard of the consequences. Brown v. Maxey, 124 Wis. 2d 426, 433, 369 N.W.2d 677, 681 (1985). The authors of Wis. Adm. Code secs. FDE 3.01(5) and (9) must have intended to compare outrageous conduct with grossly negligent conduct. For purposes of those regulations, we conclude that conduct is outrageous when a person knows that he or she has acted with a high degree of negligence but nevertheless persists in that conduct in reckless or conscious disregard of the consequences.
[11]
We conclude that for purposes of Wis. Adm. Code sec. FDE 3.01(5), Doersching was grossly negligent in that he failed to ensure that the body was properly embalmed, that all embalming incisions and the head wound were properly sutured or otherwise closed, and that the body was properly clothed or otherwise *327 appropriately contained. Whether those omissions, in and of themselves, constituted a high degree of ordinary negligence we need not decide. Doersching had actual knowledge of his omissions (except, perhaps, of the faulty embalming) and that this was to be an open casket funeral. His failure to make good his known omissions when he knew an open-casket funeral would occur exhibited a high degree of negligence, even an indifference. Doersching was grossly negligent.
[12]
For purposes of Wis. Adm. Code sec. FDE 3.01(9), Doersching's subsequent actions were outrageous. He must have known the inevitable effect upon the family were they to see the body as he left it. He nevertheless shipped the body for presentation to the family. He therefore persisted in his grossly negligent conduct in disregard of the inevitable shock to the widow and the family. His conscious disregard of that consequence exceeds all bounds usually tolerated by decent society and is nothing less than outrageous.

DISCIPLINARY ACTION BY THE BOARD
Because Doersching's conduct was grossly negligent and outrageous, contrary to Wis. Adm. Code secs. FDE 3.01(5) and (9), those regulations declare that his conduct was unprofessional. It was unprofessional for the additional reason that he failed to provide the disclosure required by Wis. Adm. Code sec. FDE 2.15(2), a failure which is uncontested.
Section 445.13(1), Stats., provides that the board may limit, suspend or revoke licenses of funeral directors and embalmers for any violation of the rules of the examining board or for unprofessional conduct. *328 The board's authority to choose between limitation, suspension or revocation is discretionary. We must accord due weight to the "discretionary authority conferred upon" the agency. Sec. 227.57(10), Stats. We accord that weight by sustaining an agency's discretionary decision unless it has abused its discretionary power.
The scope of judicial review for abuse of discretion is settled. The reviewing court may look no further than to determine whether the decisionmaker examined the relevant facts, applied a proper standard of law, and reached a reasonable conclusion. Loy v. Bunderson, 107 Wis. 2d 400, 414-15, 320 N.W.2d 175, 184 (1982).
Doersching nevertheless contends that the decision to revoke his licenses is improper. He relies on Gilbert v. Medical Examining Board, 119 Wis. 2d 168, 349 N.W.2d 68 (1984), and Strigenz v. Department of Regulation, 103 Wis. 2d 281, 307 N.W.2d 664 (1981). He states that to revoke a professional license, an agency must find on the basis of substantial evidence that the practitioner is unable to perform his or her profession at a minimal standard, as determined by a consensus of professional opinion. Because the record lacks such evidence, in his view nothing supports the imposition of any discipline upon him, but if such evidence exists, it does not support revocation of his licenses.
The state's purpose in licensing professionals is to protect its citizens. Strigenz, 103 Wis. 2d at 286, 307 N.W.2d at 667. License revocation is the ultimate means of protecting the public short of finding or imprisonment.
*329 [13]
We reject the proposition that inability to perform a licensed profession at minimal standards is the sole basis for revocation. Were that the rule, then the competent but dishonest practitioner could prey on the public until death or retirement.
Neither Gilbert v. Medical Examining Board, supra, nor Strigenz v. Department of Regulations, supra, hold that to revoke a professional license an agency must find that the practitioner is unable to perform at a minimal standard. The Gilbert court held that the medical examining board must have evidence on the level of minimum competence to revoke a license to practice medicine when the charge was that the physician had engaged in conduct which tended to constitute a danger to the health, welfare or safety of the patient or public. 119 Wis. 2d at 204-05, 349 N.W.2d at 84. The Strigenz court held that statutory authority to discipline a licensed dentist for unprofessional conduct included authority to discipline for failure to meet minimum standards of acceptable dentistry, even without enactment of specific rules prohibiting such acts. 103 Wis. 2d at 291, 307 N.W.2d at 669. Neither the Gilbert nor the Strigenz decisions even hinted that whatever the grounds for revocation, that sanction is unavailable in the absence of evidence that the practitioner cannot perform at a minimal standard.
[14]
We turn to the board's rationale for revocation. The examiner had recommended that Doersching's licenses be suspended for one year. The board disagreed. The board concurred in the examiner's determination that the serious conduct in this case evinced an indifference to the conventional perception of *330 appropriate treatment of the dead and to the feelings of the family of the deceased, and that such conduct violated fundamental principles upon which the profession was based. The board concluded that it must emphasize to its licensees the serious nature of the misconduct found in the case and must render disciplinary measures coextensive with an effective public disapproval of the conduct. In the board's opinion, nothing short of revocation would offer sufficient recognition of the unprofessional conduct involved or adequately protect the public from similar misconduct by others.
The board made a deliberate choice between suspending or revoking Doersching's licenses. When deciding that the harshest discipline was necessary, the board examined the relevant facts, applied a proper standard of law and reached a reasonable conclusion. Once we determine, as we do, that the board's decision meets this standard, we can go no further. Loy v. Bunderson, 107 Wis. 2d at 414-15, 320 N.W.2d at 184. Because we conclude that the board did not abuse its discretion, judicial review is exhausted. The board's order must be affirmed.
By the Court.Judgment reversed and cause remanded with directions to affirm the order of the board.
SUNDBY, J. (dissenting).
The board revoked the licenses of Doersching to practice as a funeral director and embalmer. The board accepted the examiner's findings of fact and conclusions of law. However, it did not accept his recommended discipline which was to suspend Doersching's licenses for one year. The board explained its variance as follows:

*331 The examiner found, and the board concurs, that the serious misconduct in this case evinces an indifference both to the conventional perception of appropriate treatment of the dead and to the feelings of the family of the deceased. Such conduct is violative of the fundamental principles upon which the profession is based.
In reviewing the interrelated purposes for imposing discipline in a case such as this, it is clear that the board must emphasize to its licensees the serious nature of the misconduct found in this case and render disciplinary measures coextensive with an effective public disapproval of such conduct. In the board's opinion, nothing short of a revocation would offer sufficient recognition of the unprofessional conduct involved or adequately protect the public from similar misconduct by others.
Doersching was charged with having acted unprofessionally in violation of Wis. Adm. Code secs. FDE 3.01(5) and (9), which define unprofessional conduct to include:
(5) Gross negligence in properly providing and performing the services of funeral directing or embalming for which the individual is duly licensed.
 ....
(9) Outrageous conduct in the practice of the profession exceeding all bounds usually tolerated by decent society.
The board made thirty-six findings of facts, only a few or which are challenged by Doersching, and five conclusions of law. The trial court concluded there was substantial evidence supporting the board's finding that Doersching was guilty of unprofessional conduct by reason of his gross negligence in properly *332 providing and performing the services of funeral directing and embalming. I agree.
The trial court held, however, that there was not substantial evidence to find Doershcing guilty of unprofessional conduct by reason by outrageous conduct in the practice of his profession exceeding all bounds usually tolerated by decent society. The trial court remanded the proceedings to the board for a rehearing on its finding of outrageous conduct, and for reconsideration of the penalty imposed. Because I agree that the evidence in the record does not support the board's conclusion that Doersching's conduct exceeded all bounds usually tolerated by decent society and that the board may have imposed lesser discipline for gross negligence, I agree the court properly remanded the matter to the board.
A determination of whether Doersching's conduct constituted outrageous behavior exceeding all bounds usually tolerated by decent society is a question of law. See Monroe v. Funeral Directors Examining Bd., 119 Wis. 2d 385, 388, 349 N.W.2d 746, 748 (Ct. App. 1984) (whether director was grossly negligent and acted in an offensive and obnoxious manner involves a determination of whether the facts fulfill a legal standard and is a question of law). The expertise of the board is significant in this case and the board's decision, although not controlling, should be given weight. Id.
We review the board's decision and the record to determine whether its conclusion that Doersching's conduct constituted outrageous behavior exceeding all bounds usually tolerated by decent society is clearly erroneous. Id. 390-91, 349 N.W.2d at 749. A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a *333 mistake has been committed. Anderson v. Bessemer City, 470 U.S. 564, 573 (1985).[1]
The applicable administrative rules contain no definition of "outrageous conduct ... exceeding all bounds usually tolerated by decent society." The conduct of Doersching which the board found to be outrageous is described in the board's Conclusion of Law No. 4:
Respondent, in having failed to properly embalm or to insure the proper embalming of the body of the deceased, and by failing to insure that all embalming incisions and other traumatic injuries were properly sutured or otherwise closed, and by failing to insure that the body was clothed or otherwise appropriately contained and enclosed for shipment and final disposition at its destination, has engaged in gross negligence in properly providing the services of funeral directing or embalming, and has engaged in outrageous conduct in the *334 practice of the profession exceeding all bounds usually tolerated by decent society in violation of Wis. Adm. Code sections FDE 3.01(5) and (9), and in violation of Wis. Stats. section 445.13(1).
Doersching's specific acts of outrageous behavior are therefore the following: (1) failing to properly embalm or to insure the proper embalming of the body; (2) failing to insure that all embalming incisions and other traumatic injuries were properly sutured or otherwise closed; (3) failing to insure that the body was clothed or otherwise appropriately contained and enclosed for shipment and final disposition at its final destination. There is no testimony that this conduct constitutes outrageous behavior exceeding all bounds usually tolerated by decent society.[2] Doersching's behavior becomes outrageous only if he knew, or should have known, that these acts would or were likely to inflict extreme emotional distress upon the Rocha family and he acted in reckless disregard of these consequences. The board discloses that the finding Doersching was guilty of outrageous conduct is compelled because of his failure to properly prepare the body "despite his knowledge that an open casket funeral was anticipated by the family." Thus, Doersching's conduct becomes outrageous only if Doersching knew that the family was intending an open casket funeral and if he willfully ignored or acted in reckless disregard of their wishes.
In considering whether Doersching's conduct was so egregious as to constitute outrageous conduct exceeding all bounds usually tolerated by decent *335 society, we must consider whether we are dealing with conduct simply founded in negligence. The trial court relied on Wisconsin JICivil 2725 which defines outrageous conduct as follows:
For such conduct to be extreme or outrageous, you must find that the average member of the community would regard such conduct as a complete denial of the individual's dignity as a person. The conduct must be gross and extreme and not merely in the field of carelessness or bad manners. [Emphasis added.]
The Restatement (Second) of Torts, sec. 46 (1964) comments with respect to outrageous conduct causing severe emotional distress which may be actionable as follows:
(d) Extreme and outrageous conduct. The cases thus far decided have found liability only where the defendant's conduct has been extreme and outrageous. It has not been enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort. Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community. Generally, the case is one in which the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, "Outrageous!"
*336 In evaluating Doersching's conduct according to this standard, several points should be emphasized: he may have believed the family had acquiesced in his recommendation that, in view of the severity of the injuries to the deceased, there be a closed casket ceremony (the family could not speak English; Doersching communicated with the family through a fifteen-year old interpreter; Doersching testified that the family told him "They wanted me just to prepare him and ship him down to funeral director Sanchez"); Doersching employed another funeral director, Russell Nitardy, to embalm the body; Nitardy testified he felt he had properly embalmed the body; the board's expert witness testified one could depend on the receiving funeral director to take care of problems that might arise as a result of air shipment, that it was not a bad practice to leave the carotid incisions open for leakage as long as they would be closed later, that it was good practice for the receiving funeral director to examine the body after shipment before viewing by the family. Doersching's expert witness, a licensed director, testified that he never dressed a body when shipping it out to another funeral home because an air flight will effect purging and gases will cause distension, that the receiving funeral director has cavity work to do, that if a funeral home is working for another funeral home, the cosmetics (makeup) should not be done until the body reaches its final destination. Doersching did not arrange for the funeral services with the Mexican funeral home nor with the cemetery. His expert witness testified that if the funeral home was doing everything, which includes the plot and cemetery arrangements, the director would have a duty to see that the body was fully prepared for the services. Doersching's expert *337 witness testified it was not gross negligence to ship a body without clothes if the director believed a funeral was going to be a closed casket funeral.
The board's conclusion that Doersching's action exhibited a willful disrespect for the feelings and welfare of the Rocha family impute to Doersching a knowledge of Mexican culture. The Mexican funeral director, Sanchez, testified as to the importance of viewing the body in Mexican culture. He said it is important for the Mexican family members to be with the deceased until the last possible minute and that is why it is important to be with the body. This evidence came out at the time of the hearing, but there is no evidence that Doersching was aware of these aspects of Mexican culture at the time he was retained.
The gist of this case is that the deceased's body did not arrive at the funeral home in Mexico in the condition expected by the family. However, the body had suffered severe trauma as a result of the auto accident in which the deceased was killed. Doersching was admittedly negligent in failing to suture the embalming incisions, wash the hair, and close the head wound. Yet there was uncontradicted testimony in the record that there were no steps Doersching could have taken which would have insured that the body would arrive in Mexico in the kind of condition the family obviously hoped for. Drainage of the wounds and purging in air flight, and lack of cosmetic makeup all contributed to the poor appearance of the body when it arrived in Mexico.
The board was entitled to find that Doersching was negligent in not knowing that the family wanted an open casket funeral and was grossly negligent in not preparing the body accordingly. But on the question of whether Doersching flouted the family's *338 wishes, or acted in reckless disregard of those wishes, the testimony is inconclusive. The board was entitled to rely on its expertise but the board could not supply the deficiency in the testimony by resorting to the expert knowledge of its members to make the necessary inferences that Doersching acted willfully or recklessly. Gilbert v. Medical Examining Board, 119 Wis. 2d 168, 205, 349 N.W.2d 68, 84 (1984). The board could not substitute its knowledge for evidence which is lacking. Id. The crucial evidence which is lacking is that Doersching acted in willful disregard of the wishes of the deceased's family, knowing, or acting in reckless disregard of the knowledge, that his actions would cause the Rocha family severe emotional distress. On the entire evidence, I am left with the definite and firm conviction a mistake has been made. I would affirm the decision of the trial court and give the board the opportunity to correct that mistake.
NOTES
[1] Section 445.13(1), Stats., provides:

Subject to the rules promulgated under s. 440.03(1), the examining board may ... suspend or revoke licenses of funeral directors, ... and reprimand funeral directors, ... for any violation ... of this chapter or of any rule of the department of health and social services or the examining board or for unprofessional conduct, including misrepresentation or fraud in obtaining the license, permit or certificate of registration.
Section 445.01(5), Stats., provides: "A `funeral director' means ...: (a) A person engaged in or conducting, or holding himself or herself out, in whole or in part, as being engaged in embalming or otherwise preparing for the burial or disposal, or directing and supervising the burial or disposal, of dead human bodies."
Wisconsin Adm. Code sec. FDE 3.01 provides in part:
Any occurrence of the following shall constitute unprofessional conduct by a licensed funeral director, embalmer or registered apprentice funeral director or embalmer or owner of a funeral establishment.
 ....
(5) Gross negligence in properly providing and performing the services of funeral directing or embalming for which the individual is duly licensed.
 ....
(9) Outrageous conduct in the practice of the profession exceeding all bounds usually tolerated by decent society.
[2] The board appears to have used "insure" and "ensure" interchangeably. The context is such that we infer it intended to use "ensure" rather than imply a duty to indemnify.
[3] Wisconsin Adm. Code sec. FDE 2.15(2) provides:

At the time tentative funeral arrangements are completed and the casket is selected, but prior to the time of rendering the service and/or providing the casket and/or merchandise and before final agreement is reached between the consumer and the funeral director, the funeral director shall give or cause to be given to the persons making the arrangements a written disclosure showing:
(a) The price of the service that the family has selected and what services are included therein.
(b) The price of each of the supplemental items of service and/or merchandise requested.
(c) The amount involved for each of the items for which the funeral director will advance monies as an accommodation to the family, insofar as any of the above items can be specified at that time.
(d) When after reviewing the written disclosure and making the casket selection and both parties agree to the final arrangements, a copy of the disclosure must be signed by the funeral director and the signed copy given to the consumer. It is recommended that the persons making the arrangements also sign the disclosure to show approval of the arrangements.
[4] All statutes referred to herein are from the most recent revision, 1985 a. 182.
[1] I recognize that in Anderson v. Bessemer City, supra, the Supreme Court applied the "definite-and-firm-conviction" standard to define "clearly erroneous" in reviewing a trial court's finding of intentional discriminationa finding of fact. So far as I have been able to determine, neither the United States Supreme Court nor the Wisconsin appellate courts have applied the standard to review an agency's finding of law. However, the standard seems appropriate to review an agency's conclusion that a set of facts meets a legal standard defined by an agency's own regulation. When the construction of an administrative regulation, rather than a statute is in issue, deference is even more clearly in order. Pfeiffer v. Board of Regents, 110 Wis. 2d 146, 155 n. 12, 328 N.W.2d 279, 283 (1983), citing Udall v. Tallman, 380 U.S. 1, 16-17 (1965). In my view, we should not set aside an agency's determination that a set of facts meets a legal standard defined by the agency's own rule unless we reach a definite and firm conviction the agency has erred.
[2] The board's expert did not claim the embalming job was done negligently. The witness testified that the other acts or omissions constituted gross negligence.